## JOSE MA RIOJAS v. THE STATE.

*No. 1029.   Decided June 10th, 1896.*

### 1.   Bill of Exceptions—Approval and Filing of.

A bill of exceptions, which was not approved and filed during the term of court,
cannot be considered, notwithstanding the trial judge certifies, that it was handed
to him during the time prescribed by law, but was, in some manner, misplaced.   It
was the duty of counsel to follow up his bill and see that it was approved and filed
in time.

### 2.   Evidence in Support of Impeached Witness—When Admissible.

Evidence offered to support a witness, by showing that he had made similar state-
ments shortly after the occurrence, is not admissible as original evidence, except in
cases of rape and assault with intent to rape.   In other cases, such evidence is
only admissible where, on cross-examination or otherwise, an attempt has been made
to show that the witness' testimony has been recently fabricated, or that he has
been induced to testify under improper influence or motives.

### 3.   Same—Supporting Testimony Inadmissible When.

Evidence supporting the testimony of an impeached witness, is never admissible
as evidence in chief; nor, when the witness is attacked by proof of bad reputation
for truth and veracity.

**4.  New Trial—Newly Discovered Testimony—Cumulative Testimony— What is.**

A new trial will not be granted for testimony which is merely cumulative. Evidence is cumulative which only multiplies witnesses as to one or more facts already investigated, or only adds other circumstances of the same general character. But, evidence which brings to light some new and independent truth of a different character, although it tend to prove the same proposition or ground of claim before insisted on, is not cumulative within the rule. See, testimony stated in the opinion, which is held not to be cumulative, and for which a new trial should have been granted.

APPEAL from the District Court of Atascosa. Tried below before Hon. M. F. LOWE.

This appeal is from a conviction for murder in the second degree, the punishment being assessed at ten years' imprisonment in the penitentiary.

Defendant was indicted for the murder of R. San Miguel, by choking him with a sash, in Atascosa County, on the 20th day of December, 1886.

The testimony shows that deceased started from his home, in a wagon drawn by two mules, for San Antonio, to sell a coop of chickens and turkeys which he had in the wagon. The mules · he was working belonged to, and had been borrowed from defendant. Deceased re-shod defendant's horse that afternoon, and the coop of fowls were taken out of the wagon, and he and Jesus Garza went from there in the wagon to the house of Augustine Hernandez. At this house five hides and two sacks of dried meat were put into the wagon to be taken to town and sold. As deceased was returning in his wagon to defendant's house, Miguel Rios, a boy 12 or 13 years of age, at that time, came with his father and got into the wagon to go with deceased to San Antonio.

Miguel Rios testified to his age at the time of the murder, ten years ago; testified to his getting in the wagon with deceased to go to San Antonio, and that as they were returning towards the house of Jose M. Riojas (the defendant) Augustine Hernandez rode alongside upon horseback. Upon the road they met defendant and one Trevenio, both riding upon one horse. That they stopped to talk, and defendant said to deceased, "He (deceased) would have to look out for they might arrest him when he went through Rossville, for the meat and hides were ill gotten." When defendant told the deceased this, deceased said, "He would have nothing more to do with them, as he did not want to get into trouble, and that defendant had fooled him about the meat and hides." Defendant told him he had to take them as he had started with them. Deceased said, "He would go no further with the ill gotten property." Witness says: "Defendant got off his horse and pulled deceased out of the wagon and threw a sash (a Mexican "banda," which is a sash worn around the waist), around deceased's neck, and Augustine (Hernandez)' got down off his horse and pulled one end of the sash and defendant pulled the other. Riojas pulled the deceased out of the wagon and put the sash around deceased's neck by himself. Augustine was right there

and caught hold of the sash as soon as it was thrown around the neck of deceased, and pulled on the same and choked the deceased to death. They then put the dead body in the wagon, and drove on to defendant's house, where they took it out and put it on the ground and covered it with a quilt I had taken with me from home; and, they took out the meat and hides and took them out into a field and buried them, and came back to the house and put the dead body and chicken coop into the wagon and drove it off. I don't know where they went." He says, they were gone but a short while and returned without the wagon and body, and got on their horses and went to a dance at Anastacio Martinez's house, and came back no more that night. The witness says, that he did not go to bed that night. That he went home and reached there as day was breaking; and as soon as he got home, he told what had occurred to his father and mother.

Juan Gonzales, for the defendant, testified, that after the dance at Martinez's was over, and between 1 and 2 o'clock, as he and defendant and Augustine Hernandez were returning home together they came upon deceased's wagon by the side of the road, and saw deceased lying over on the chicken coop, behind the seat—called him—he did not answer. That they thought he was sick, or dead. That they went and notified the neighbors and the justice of the peace. The justice held an inquest next morning; and the inquest jurors, who testified as witnesses, stated that they saw no marks of violence upon the body.

The defendant proved by one or two witnesses, that they had seen deceased in a fit on one occasion; the purpose being to show that he was subject to fits and had probably died in one. His relations testified, that he had never had fits; and the testimony generally tended to show that he was a stout and healthy man.

Defendant attacked the reputation of Miguel Rios for truth and veracity, several witnesses testifying that it was bad, others good. In rebuttal, and in support of his testimony, Mrs. Mateo Rios, the mother of said witness, was permitted, over objection of defendant, to testify as follows: "My name is Mrs. Mateo Rios; am the mother of Miguel Rios. Know defendant, and know Augustin Hernandez and R. San Miguel, and remember when San Miguel was reported to have been found dead. On the day before, my son, Miguel, went up to Augustin's house, by appointment, to go to town with deceased, R. San Miguel; and I sent by Miguel a quilt to my sister, who lived in San Antonio. The next morning, just at daybreak, Miguel came home, and I and my husband, Mateo Rios, met him at the kitchen door, and asked him why he came back (?), and he told us that J. M. Riojas and Augustin Hernandez had killed R. San Miguel; that they had choked him with a sash."

Cross-examined by defendant's counsel: "Miguel brought the quilt back with him, and there was blood on it. He told us about it, and only spoke to me two or three times, just about that time, and I told him not to tell it, because I was afraid they might put him into it. I

don't know why he tells it now that he is a grown man. Miguel Rios, my son, at that time, was about 12 or 13 years of age, and I was afraid for him to tell it, and advised him not to do so, he being so young. I knew there was something wrong when I saw him, Miguel, coming home so early in the morning, and that is the reason I asked him, what was the matter; and, he immediately told me what I have already stated in my direct examination."

Added by the court: "The foregoing testimony of the witness, Mrs. Mateo Rios, is limited by the charge of the court, as will be shown by reference thereto, only to the support and corroboration of the witness, Miguel Rios, against whom the defense introduced impeaching testimony."

*J. W. Preston, J. T. Bivens* and *J. M. Eckford,* for appellant.— The court clearly erred in admitting the testimony of Mrs. Mateo Rios, as to what her son, Miguel Rios, told her as to how and by whom Roberto San Miguel was killed, because the same was hearsay, and because it was secondary evidence, when primary evidence had already been produced, and because the witness, Miguel Rios, had not been impeached nor sought to be impeached in the manner that renders statements of a witness to a third party admissible, and because the testimony was not the best, nor even secondary evidence, being no evidence, and not even admissible, although no better evidence could be obtained, and because it was a reproduction of the testimony of the witness, Miguel Rios, not delivered in the presence of the court nor before a magistrate, nor under the moral and legal sanction of an oath. Harris v. State, 1 Tex. Crim. App., 74; Belverman v. State, 16 Texas, 130; Reeves v. State, 7 Tex. Crim. App., 276; Holt v. State, 9 Tex. Crim. App., 571; Felder v. State, 23 Tex. Crim. App., 477; Favors v. State, 20 Tex. Crim. App., 155; Washington v. State, 17 Tex. Crim. App., 197; Maines v. State, 23 Tex. Crim. App., 568; Estes v. State, 23 Tex. Crim. App., 600; Montgomery v. State, 23 Tex. Crim. App., 650; Chumley v. State, 20 Tex. Crim. App., 547. They also cited, and in this connection discussed, Bailey v. State, 9 Tex. Crim. App., 98; Sanders v. State, 31 Tex. Crim. Rep., 529; Gallaher v. State, 28 Tex. Crim. App., 247; Goode v. State, 32 Tex. Crim. Rep., 505; Williams v. State, 24 Tex. Crim. App., 637.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and given ten years in the penitentiary, and prosecutes this appeal. Appellant presents to this court a bill of exceptions to the admission of certain evidence, signed and approved by the judge and filed after the expiration of the term. Accompanying the bill is the following explanation by the judge: "This bill of exceptions was handed me within the time prescribed by law, and during the term of court at ·which the case was tried, but was in some manner misplaced, and it is a

fact that the exception to the admission of the testimony was reserved by the defendant, through his counsel, at the time of the admission of the same; and the clerk of the District Court of Atascosa County is here now ordered to file the same as part of the record in this case, and transcribe same, making a certified copy of same, and all indorsements thereon, and forward same to Austin as a part of the transcript in said cause." This bill cannot be considered. While it seemingly was neglect on the part of the judge not to approve and file the bill of exceptions, it was the duty of counsel to follow up his bill, and see that it was approved by the judge during the term, and filed with the clerk. This is statutory. See, George v. State, 25 Tex. Crim. App., 229; Exon v. State, 33 Tex. Crim. Rep., 461. However, if we could consider this bill of exceptions, we are of the opinion that the objection to the admission of the testimony of Mrs. Rios that the State's witness, Miguel Rios, told her how the homicide occurred on the next morning thereafter, should have been sustained. This evidence to support the State's witness, by proving that he had made the same statement the next morning after it occurred, was introduced as original testimony. In no case can this be done, except in cases of rape and assault with intent to rape. If, however, the defendant attempted to show, upon cross-examination or otherwise, that his testimony on the trial was recently fabricated, or that he was induced to so testify from some motive or improper influences, then he could be supported by proof that he made the same statement before the influences were brought to bear, or soon after the transaction, and such testimony would go to solve the issue as to whether his testimony was recently fabricated, or whether it was the result of these improper influences and motives. See, Robb v. Hackley, 23 Wend., 56; People v. Doyell, 48 Cal., 85; Hotchkiss v. Insurance Co., 5 Hun, 90. Such supporting testimony is never admissible as evidence in chief, nor when the witness is attacked by proof of bad reputation for truth and veracity can he be supported in this way. To be more explicit: The defense introduced evidence for the purpose of showing that the witness for the appellant, or vice versa, has a bad reputation for truth and veracity. The party introducing the witness cannot support him by proof that he told the same tale soon after the transaction, or at any other time, as that sworn to on the trial. See, Russell v. Coffin, 8 Pick., 143; Rogers v. Moore, 10 Conn., 13; Webb v. State, 29 Ohio Stat., 351. The rule is: "When the witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, it may be shown that he made similar declarations at a time when the imputed motive did [not exist. So, in contradiction of evidence tending to show that the account of the transaction given by the witness, is a fabrication of late date, it may be shown that the same account was given by him before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen." Mr. Roscoe and Mr. Wharton, and other text authors, lay down the rule that, where the adverse party undertakes to show that

the witness has made conflicting statements about the same matter, the party introducing the witness cannot support him by proving that soon after the transaction he made a similar statement as that sworn to on the trial. There is a line of authorities holding that you may support the witness upon such an attack. We have followed this line of authorities. Appellant was convicted of the murder of one Roberto San Miguel, alleged to have been committed in the year 1886. The indictment was presented on the 1st day of April, 1896. The only eye-witness in the case was one Miguel Rios. At the time of the commission of the homicide said witness was a small boy, from 10 to 13 years of age. He testified that deceased was choked to death by means of a sash around his neck, and that the defendant and one Augustin Hernandez committed the homicide. His evidence as to the particulars of the homicide is exceedingly meager, and the circumstances supporting his testimony as to the cause of the death, taken on the inquest trial, was also meager. The theory of the defense was, that he came to his death on account of a fit. This was attempted to be shown by circumstantial testimony, and the defendant showed that on a former occasion the deceased was seized with a fit. In view of the character of testimony offered by the State as to the cause of the death, and the theory presented by the defendant, that he died in a fit, any testimony that the defendant could offer on that point became exceedingly important and material. After his conviction, the defendant made an application for a new trial, on the ground of newly-discovered evidence, and produced the affidavits of certain witnesses to the effect that the deceased had formerly been afflicted with fits, and that it was hereditary in his family; and also affidavits were presented that this testimony, by the use of reasonable diligence, was not discovered before the trial. It may be that the learned judge overruled the application for a new trial because such testimony was cumulative. If it be true, that the testimony was cumulative, the court acted correctly in refusing to grant a new trial upon this ground. The question, therefore, for our decision is, what is cumulative testimony? Some courts have held that if the testimony goes to support the same theory or advances the same grounds of action for a recovery, that it is cumulative. It has been repeatedly decided by the Supreme Court of New York that a new trial will not be granted merely for the discovery of cumulative facts and circumstances relating to the same matter which was proven on the former trial. However, subsequent decisions to the leading case of Guyot v. Butts, 4 Wend., 579, have defined cumulative evidence very clearly and satisfactorily. The opinion of Chief Justice Church in Waller v. Graves, 20 Conn., 305, contains the best definition we have found of the meaning of cumulative evidence. It was an action for libel brought by A. against B. The ground of defense was that the libelous writing, after it was signed by B., and before publication, was altered by the insertion therein of material words, without the knowledge or approbation of B., the defendant. To support this defense, B. introduced C., who drew up the writing. C. testified that the writing as published was not like the

paper written by him and signed by B., in that it did not contain the words in question. Now, it was afterwards discovered that D., without the knowledge or consent of either B. or C., inserted these words. On application for a new trial on the part of B. it was held that the testimony of D., showing this fact, was not objectionable as cumulative evidence, notwithstanding that one of the witnesses (C.) swore on the trial that the obnoxious words were not in the paper signed by B., and the testimony of other witnesses tended strongly to show that they were. Chief Justice Church, in delivering the opinion, says: "There are often various distinct and independent facts going to establish the same ground on the same issue. Evidence is cumulative which merely multiplies witnesses to any one or more of those facts before investigated, or only adds other circumstances of the same general character. But that evidence which brings to light some new and independent truth of a different character, although it tend to prove the same proposition or ground of claim before insisted on, is not cumulative, within the true meaning of the rule on this subject. Suppose a question on trial to be whether the note of a deceased person has been paid, and witnesses have been introduced testifying to various facts conducing to prove such payment, and after a verdict for the plaintiff the executor should discover a receipt or discharge in full, or had discovered that he could prove the deliberate confession of the plaintiff of the payment of the note. There could be no question, in such a case, but a new trial should be granted, although the new facts go to prove the former ground of defense." In an action on a bill of exchange, purporting to be drawn by the defendant, proof was introduced by the defendant tending to establish the fact that the defendant had never signed or authorized the signing of the said bill, that he was not present when it was signed, that it was signed by some other person without the knowledge or consent of the defendant. After a verdict for the plaintiff, the defendant moved for a new trial upon the affidavit of a witness who stated that he was present at the time the bill of exchange was drawn, and that the defendant was not present; that the defendant's name was signed by a third party, who was now dead, without the knowledge or consent of the defendant. Held: That this newly-discovered evidence could not be regarded as cumulative; that, as none of the witnesses who testified on the trial were present when the bill of exchange was drawn, their evidence was not of the same kind with that sought to be introduced. The motion was therefore granted. Vardeman v. Byrne, 7 How. (Miss.), 365. See, 3 Grah. & W. New Trials, pp. 1048–1055. Applying these rules to this case, defendant had introduced evidence that the deceased had one fit at a certain time and place. This was for the purpose of showing the probability that he died from a convulsion or fit, and was not murdered; and in support of this theory, after the verdict of the jury, he brings forward the affidavits of a number of witnesses for the purpose of showing that the deceased was in the habit of having fits, and that fits were hereditary in his family. Now, this

testimony was not cumulative, although it tended and was sought to serve the same purpose as the evidence introduced, to-wit: That he had had one fit.  Proof that he had one fit would tend very slightly to show that probably he died from fits, but when proof was made that he was in the habit of having fits, and that it was hereditary in his family, it would strengthen the presumption very cogently.  The judgment is reversed, and the case remanded.

*Reversed and Remanded.*

[Note.—A motion for rehearing, filed by the Assistant Attorney-General for the State, was overruled without a written opinion.]