CLARENCE HOWE v. THE STATE.

No. 3552. Decided May 26, 1915.

Rehearing denied June 16, 1915.

**1.—Murder—Evidence—Hearsay.**

Upon trial of murder, there was no error in refusing to admit testimony as to what the drummers told the deceased had said about patronizing his stable, as this was merely hearsay.

**2.—Same—Evidence—Threats.**

Upon trial of murder, there was no error in admitting in evidence testimony of threats, in this that the witness was with the defendant the latter part of July talking to him when the deceased drove by, and defendant then remarked to the witness he bet he would kill somebody before Christmas, it being a fact that defendant killed the deceased before Christmas, and other facts and circumstances in the record showed that the defendant referred to the deceased when he made this remark. Following Miller v. State, 31 Texas Crim. Rep., 609, and other cases.

**3.—Same—Rule Stated—Threats.**

Though the name of the deceased be not mentioned when the threat is made, yet if it can be reasonably gathered from the evidence that the deceased

was meant when the threat was mentioned, it is admissible. Following Williams v. State, 40 Texas Crim. Rep., 497, and other cases.

**4.—Same—Evidence—Declarations of the Deceased—Withdrawal of Testimony.**

Where the court, after admitting the declarations of the deceased, reconsidered his action and withdrew the same from the jury, there was no reversible error. Following Roberts v. State, 48 Texas Crim. Rep., 216, and other cases.

**5.—Same—Evidence—Declarations of the Deceased—Uncommunicated Threats.**

Where, upon trial of murder, defendant introduced in evidence uncommunicated threats by the deceased to show the latter's state of mind, and as to who began the difficulty, which was an issue in the case, there was no error in permitting the State to show that these uncommunicated threats did not correctly show the state of mind of deceased, but since uttering them, he had undergone a change of mind.

**6.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, the evidence did not raise the issue of manslaughter, the complaint to the court's charge in not properly charging on manslaughter did not constitute reversible error. Following Eggleston v. State, 59 Texas Crim. Rep., 542.

**7.—Same—Requested Charge.**

Where the requested charge was sufficiently embraced in the main charge, there was no reversible error, in the absence of any exception to the charge as given in the respect complained of.

**8.—Same—Newly Discovered Evidence—Want of Diligence—Cumulative Evidence.**

Where the alleged newly discovered evidence was either cumulative or the motion for new trial showed a want of diligence to procure the same, there was no error in overruling the motion for new trial on that ground.

**9.—Same—Misconduct of Jury—Declaration of Juror.**

Where defendant complained that one of the jurors had expressed an opinion that defendant should be severely punished, before he was taken upon the jury and after the facts had been detailed to the juror, but the evidence showed that the juror could not be positively identified and that he denied ever having made such statement as to the guilt of the defendant, there was no error in overruling the motion for new trial.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*O'Neal & Allday* and *Jones & Henry,* for appellant.—On question of communicated threats and charge of court: McDowell v. State, 55 Texas Crim. Rep., 596; Gaines v. State, 58 Texas Crim. Rep., 631, 127 S. W. Rep., 181.

On question of declarations of deceased: Segura v. State, 16 Texas Crim. App., 221; Brown v. State, 169 S. W. Rep., 437; Dowell v. State, 58 Texas Crim. Rep., 482, 126 S. W. Rep., 874.

On question of withdrawal of testimony: Darnell v. State, 58 Texas Crim. Rep., 585; Andrews v. State, 64 Texas Crim. Rep., 2, 141 S. W. Rep., 220.

*C. C. McDonald*, Assistant Attorney General, for the State.—On question of threats of defendant: Mathis v. State, 34 Texas Crim. Rep., 39; Hardy v. State, 31 id., 289.

On question of state of mind of defendant of former difficulties: Heffington v. State, 41 Texas Crim. Rep., 315.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at five years confinement in the State penitentiary, from which judgment he prosecutes this appeal.

It appears that appellant and deceased had been friends for many years until about April of last year. Deceased was a member of the mercantile firm of Murphy Bros., doing business at Maud, in Bowie County, the members of the firm being Al Murphy and deceased, Lee Murphy. Deceased was about twenty-eight years of age. Some time prior to last April, appellant's father, Emmett Howe, went into the livery business at Maud, and his two sons, Henry Howe and appellant, were assisting him in running the stable. Henry is about twenty-one years of age, while appellant was only eighteen. It appears that when Emmett Howe went into the livery business he solicited the hauling of Murphy Bros. and agreed to do the hauling at a given price, Murphy Bros. representing to them that they had more hauling than any other firm in the town. Henry says that after doing the hauling for a while they ascertained other firms in the town had as much hauling to do as did Murphy Bros., and they notified Lee Murphy that they could no longer haul at the price agreed on, but would in future charge them the same as others were charged. Murphy Bros. ceased giving their hauling to appellant's father, and had others to haul for them. Emmett Howe, appellant, and his brother all say that deceased not only ceased to patronize them, but threw their influence in favor of another livery stable in the town, and refused to purchase from drummers who patronized their livery stable, thus materially injuring their business. And here, we might say, the court did not err in refusing to permit Mr. Emmett Howe to testify what the drummers told him deceased had said about patronizing his stable. This would be hearsay and inadmissible. If appellant desired to prove what deceased had said to the drummers about patronizing defendant's father's livery business he should have called the drummers to so testify. This culminated in trouble in April of last year, Henry Howe saying he went to see deceased about the matter, and while they were talking appellant came up. Without discussing who brought about the difficulty that ensued, it appears that appellant and his brother got the best of this difficulty, having to be pulled off of deceased. Roy Beard testified that on the day of this difficulty, and immediately thereafter, appellant came to his father's restaurant, and in talking with him said he was going to kill Lee Murphy, the man he

afterwards killed, in October. According to defendant's testimony deceased entertained ill-will towards him from the date of this difficulty in April until the day of the homicide, and on several different occasions had made threats to kill him, some of which were communicated and some of which were not.

The State called L. E. Fisher, who testified that he was with appellant the latter part of July talking to him, when Lee Murphy, the deceased, drove by, and appellant then remarked to him "he bet he would kill somebody before Christmas:" It is a fact that he did kill somebody before Christmas, and it was the man who drove by just before he made the remark he would kill somebody before Christmas. Appellant does not say, if he made the remark, he had reference to any other person than Murphy, but simply denies making the remark at all. This was objected to on the ground that he did not call Murphy's name, and did not individuate him as the man referred to, if appellant did make the remark. This objection might be tenable if there were no other facts and circumstances in the record to show to whom he did refer, if he made the remark. But the record, in our opinion, teems with facts and circumstances that if appellant used the language attributed to him by Mr. Fisher, he referred to Murphy and to no other person. Appellant cites us to a number of cases wherein it is held that if the person on trial makes general threats and there is nothing in the record to show that the deceased was the person referred to when the threat was uttered, such threats are inadmissible. This is a correct rule, and one to which this court has at all times adhered, but there is another rule to which appellant does not refer, and that is, though the name of deceased be not mentioned when the threat is made, yet if it can be reasonably gathered from the evidence that deceased was meant when the threat was mentioned, it is admissible. Miller v. State, 31 Texas Crim. Rep., 609; Williams v. State, 40 Texas Crim. Rep., 497; Sebastian v. State, 41 Texas Crim. Rep., 248; Thomas v. State, 42 Texas Crim. Rep., 386; Taylor v. State, 44 Texas Crim. Rep., 547; Marchan v. State, 45 Texas Crim. Rep., 212; Armstrong v. State, 50 Texas Crim. Rep., 467; Hardy v. State, 31 Texas Crim. Rep., 289; Mathis v. State, 34 Texas Crim. Rep., 39; Davis v. State, 56 S. W. Rep., 53. The record before us does not disclose that appellant had had any serious trouble with any other person in Maud from April to October, and the threat being made shortly after the difficulty in April, and it being apparent, from the testimony offered by appellant that the same conditions existed at the time he made the remark, if he made it, that existed at the time of the difficulty in April, and other remarks and threats testified to, render it morally certain that appellant referred to Lee Murphy, if he made the threat testified to by Mr. Fisher.

The only other bills of exception in the record relating to the admissibility of testimony complain that the court erred in permitting H. S. Irby to testify that on Tuesday before the killing took place on Saturday, he was talking with Lee Murphy, deceased, and asked him, "How are you and the Howe boys getting along?" when deceased re-

plied, "All right as far as I am concerned in the matter. I am through with it for good, absolutely." Also the testimony of Al Murphy, who testified, in substance, to the same effect. The contention being that appellant was not present; had not been informed that deceased made such remark, or had no knowledge of it at the time the killing occurred. Ordinarily the objection would be good, and should have been sustained. The court, after admitting the testimony, reconsidered his action, and excluded it from the consideration of the jury, and instructed the jury not to consider it for any purpose. Thus if the court erred in admitting the testimony, he did his best to rectify the wrong during the trial, but appellant insists that the effect was so damaging the evil effect could not be removed by withdrawing it from the consideration of the jury. We do not think so. Roberts v. State, 48 Texas Crim. Rep., 210; Hatcher v. State, 43 Texas Crim. Rep., 237; Trotter v. State, 37 Texas Crim. Rep., 468; Jones v. State, 33 Texas Crim. Rep., 7; Miller v. State, 31 Texas Crim. Rep., 609; Morgan v. State, 31 Texas Crim. Rep., 1; Sutton v. State, 2 Texas Crim. App., 342; Robinson v. State, 63 S. W. Rep., 869. But we are not going to rest our opinion, that these bills present no error, on the ground that the testimony was withdrawn, although we might do so. Under the record in this case we think the testimony was admissible. Appellant introduced witnesses who testified to threats made by deceased which he admits were not communicated to him, and at his request the court instructed the jury: "You are further instructed that, if the deceased, Lee Murphy, prior to the time he was killed, made threats against the life of the defendant or to do him serious bodily harm, and that said threats were so made, but that same were not communicated to defendant, then you can consider such threats for the purpose of showing the state of mind of deceased at the time he was killed, and for the further purpose of determining who probably began the difficulty." Now if appellant could and did introduce these uncommunicated threats to show the state of mind of deceased, and who began the difficulty, if the State had evidence which tended to show that after deceased had made these threats, and he, at a time just before the difficulty, was not in the state of mind the uncommunicated threats would indicate, why is it not permissible for it to so show in rebuttal of the testimony offered by defendant to show the state of mind of deceased. It may be true he was not told of these remarks, neither was he aware of the uncommunicated threats, and when he introduces the uncommunicated threats to show the state of mind of deceased, it is permissible to show, if the State can do so, that these uncommunicated threats did not correctly show the state of mind of deceased, but since uttering them he had undergone a change of mind. Evidence is admitted to ascertain the truth, without bias in favor or against the State or defendant, and although these uncommunicated threats, introduced by appellant, could not have any bearing on the mind of appellant nor influence his course, because he did not know of them, yet they have always been held admissible in this State on the ground they would aid the jury in passing on what occurred at

the time of the homicide when self-defense is an issue—whether or not the acts of deceased at the time, viewed in the light of the uncommunicated threats, were such as to lead them to believe that he began the difficulty, or was he the initial wrongdoer in bringing about a condition of affairs which resulted in the homicide? Uncommunicated threats are admitted as bearing on the acts and conduct of deceased at the time of the homicide, while communicated threats may shed light on the acts and conduct of the defendant, and aid the jury in passing on the matter as to how it reasonably appeared to him. As the uncommunicated threats were introduced by defendant for the purpose of having the jury take them into consideration in passing on whether or not his contention was correct, that deceased, when he spoke to him, reached for a pistol, and as he introduced such testimony for such purpose, it was permissible for the State to show that since uttering the threats, of which appellant had no knowledge, and, therefore, could not have influenced him, deceased had undergone a change of mind. If no uncommunicated threats had been introduced by appellant, such testimony would not be admissible, but when either the State or defendant introduces evidence to prove a given fact, it can be rebutted by the opposite party by proof of a similar character and kind.

In the next bill of exceptions is a complaint of the court's charge in presenting manslaughter. In his brief this ground is not presented, and in the oral argument before this court it was conceded by appellant's counsel that the charge was in conformity with the decisions of this court. However, we will state we do not think the issue of manslaughter is raised by the testimony in this case. There is proof of a difficulty which occurred in April; then proof of threats, both communicated and uncommunicated, and especially proof of a threat which is alleged to have been made on Thursday before the killing, and communicated to appellant on the day of the difficulty. Appellant says he was loading ties when his brother communicated to him the threat made on Thursday. Henry Howe testified that on Thursday he met deceased in Sulphur bottom, and deceased said, "Have you got any advantage of me now?" and upon replying, "No," deceased said, "We are going to have some trouble." He replied, "It is a good place," when deceased pulled up a gun, and Henry says he told deceased he was not prepared for any such trouble, and deceased put down the gun, and asked him where was Clarence (the appellant), and said, "He is the son-of-a-bitch I want—I am going to kill him." A few other words passed, but no difficulty occurred. Henry and Egbert Howe say they told appellant about this Saturday morning, and told him when he went to Maud that day to stay out of deceased's way. Appellant says he went to Maud, and admits that he said during the day to Lee Rachel, "There goes Lee Murphy—I want to see him," and that later he did see deceased. He says he was walking up the street and saw Murphy, deceased, talking to Jim McDonald; that when he got in about ten feet of them he said, "Mr. Murphy, why was it you said

those words to my brother in the bottom the other day?" Appellant says deceased made no reply, but turned towards him and took a step or two, throwing his right hand to his hip pocket, when he shot. That he would not have shot had he not put his hand back there. No witness says Murphy said a word when appellant accosted him. The contest in the evidence is whether or not Murphy threw his hand to his hip pocket. The State's testimony is that Murphy had a check in his hand and when appellant accosted him he made no demonstration whatever, merely turning to see who it was spoke to him, when appellant shot and killed him; that Murphy was in his shirt sleeves and unarmed. As hereinbefore stated, appellant's theory, which finds support in the testimony of his witnesses, was that when he accosted Murphy, Murphy started towards him, throwing his hand to his hip pocket. His testimony presents the issue of self-defense, not manslaughter. Eggleston v. State, 59 Texas Crim. Rep., 542.

There was no other exception reserved to the charge of the court, but appellant did reserve an exception to the refusal of the court to give his special charge No. 2. This charge was sufficiently embraced in the main charge in the absence of any exception to the charge as given in the respect complained of.

These are all the bills of exception in the record, but appellant contends that the court should have granted him a new trial on account of newly discovered testimony. The testimony of H. C. Riley can not be claimed to be newly discovered. The record shows that appellant had had process issued for this witness, and he knew of his testimony before the trial. If he did not desire to go to trial without the presence of this witness, he should have moved to continue the case on account of his absence. He could not announce ready, take his chance on acquittal, and in the event the verdict was adverse to him, expect to get a new trial on account of testimony of a witness for whom he had had process issued, and whom he knew was not in attendance on court. In addition to this, the affidavit of Mr. Riley shows his testimony would be the same as that of his brother, Jule Riley, who on the trial testified that on Thursday before the killing he saw deceased at the barn of Howard Warrington and deceased had a shotgun with him on that occasion. Appellant never saw deceased that day, and had he moved to continue on account of the absence of H. C. Riley (which he did not do) the testimony would not be of that material character which would have authorized a continuance, and certainly presents no ground for a new trial when he went to trial voluntarily, knowing the witness was not in attendance on court.

The testimony of S. P. Holliday and J. W. Fowler, appellant says, is newly discovered, and in so far as this record goes there is nothing to show that he did know what they now say they would testify. However, both witnesses place themselves at the scene of the killing and say they witnessed it. The killing took place October 3, 1914; the trial did not take place until the first of January, 1915. It seems to us the use of due diligence would have enabled appellant to have discovered the names

of all parties who were present at the scene of the homicide and ascertained to what they would testify. In White's Ann. Proc., sec. 1149, subdiv. 4, the authorities are collected, and the rule stated to be: "The motion does not show diligence by simply alleging that the facts were unknown to defendant, and could not have been discovered by the use of ordinary diligence. Want of diligence in the discovery of evidence is not excused by confinement in jail when it is not further shown that the accused was without friends capable of rendering him the necessary assistance." Appellant's father and two grown brothers resided in and near Maud. They by their testimony on this trial show that they feel a deep interest in the case, and the fact that Messrs. Holliday and Fowler witnessed the difficulty, and what they would testify could have been ascertained by appellant, his father and brothers by the use of ordinary diligence. But if this were not true, the same state of facts to which Messrs. Holliday and Fowler say they would testify is sworn to on the trial by Mr. W. H. Massey, appellant's father, Emmett Howe, and other witnesses, as well as by appellant, and it is well established by the decisions of this court that a new trial will not be granted for newly discovered testimony which is merely cumulative. Evidence is cumulative which only multiplies witnesses as to one or more facts already sworn to by witnesses, and only adds other circumstances of the same general character. Ma Riojas v. State, 36 Texas Crim. Rep., 182, and cases cited in sec. 1149, White's Ann. Proc., subdiv. 6.

The only other question presented is one that has given us no little difficulty. The record shows that Jack Bartlett was one of the jurors who tried appellant. Dr. H. P. Evans files an affidavit that he talked with Bartlett about this case, and at his request had detailed to him the facts within his knowledge, and Mr. Bartlett had expressed the opinion appellant should be severely punished. The State contravenes this ground of the motion, and attaches the affidavit of Mr. Bartlett denying that he had ever talked with Dr. Evans about the matter, or that he had ever expressed an opinion to him or to anyone else. If this was all we had before us we would feel inclined to sustain appellant's contention, but it appears that the court heard both Dr. Evans and Mr. Bartlett testify when he heard the motion for a new trial, and that on that hearing Dr. Evans would not positively identify the juror as the man who talked to him, while Mr. Bartlett was very positive that he was not the man. Dr. Evans says the man who talked to him was clean shaved; that with the whiskers the juror Bartlett had on his face at the time of the hearing on the motion for a new trial he would not be willing to state that he was the man, and under such circumstances we can not say the trial court erred in overruling the motion for a new trial.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 16, 1915.—Reporter.]