### MILTON SPENCE V. THE STATE.

#### No. 4186. Decided November 1, 1916.

**1.—Murder—Evidence—Threats.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that defendant was a bootlegger, and that the deceased was a constable, seeking to procure evidence to prosecute the defendant, there was no error in

permitting the State to introduce the declarations of the defendant made some time before the homicide that the first man who interfered with him in selling whisky he would kill, etc., and that if he did quit selling whisky the deceased would not make him quit, etc. Following Hiles v. State, 73 Texas Crim. Rep., 17, and other cases.

**2.—Same—Evidence—Moral Turpitude.**

Upon trial of murder and a conviction of manslaughter, where defendant testified, there was no error on cross-examination, to show that the defendant was under an indictment for a felony; the court's attention not having been called to the fact that this occurred some twelve years before the motion for new trial was filed.

**3.—Same—Evidence—Insult to Female Relative—Harmless Error—General Reputation.**

Where, upon trial of murder and a conviction of manslaughter, the defense introduced testimony of an insult by the deceased to defendant's wife, whereupon the State, in rebuttal, introduced some testimony, the defendant should have been allowed to introduce testimony as to the general bad reputation of deceased for virtue and chastity, although the same was not in rebuttal of the State's testimony. However, as the defendant was convicted of manslaughter, the same was harmless error.

Appeal from the District Court of Morris.   Tried below before the Hon. J. A. Ward.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant

C. C. *McDonald,* Assistant Attorney General, for the State.—On question of threats:   Mathis v. State, 34 Texas Crim. Rep., 39, and cases cited in opinion.

On question of rebuttal testimony: · Williams v. State, 35 Texas Crim. Rep., 183; Dement v. State, 39 id., 271; Bittick v. State, 40 Texas, 117.

On question of introducing testimony at any time before argument is closed:   Phipps v. State, 34 Texas Crim. Rep., 608; Burt v. State, 40 S. W. Rep., 1000; Moore v. State, 7 Texas Crim. App., 14; Malton v. State, 29 id., 527.

On question of general reputation:   Pence v. Com., 51 S. W. Rep., 801.

PRENDERGAST, PRESIDING JUDGE.—Appellant was tried for murder and found guilty of manslaughter with the highest penalty assessed.

The testimony from the State's side ·especially tended very strongly to show that appellant was guilty of murder in killing O. A. Knieff, who was a constable at the time and had been for some months.   The theory and contention of the State was—and there was abundant evidence in the record tending to that effect—that appellant was a "bootlegger" selling intoxicating liquor in prohibition territory and had been for some time.   That Joe Davis, the justice of the peace in the

small town where the killing occurred, and said Knieff, constable, were on his trail seeking to procure evidence to prosecute him, and that they had on more than one occasion recently before the killing had parties before them for that purpose. Growing out of their investigations and seeking evidence to prosecute and convict him, the constable had that very day, before the killing about 8 o'clock that night, arrested him on a complaint and warrant charging him with the theft of some whisky; and that three or four weeks before that when they began one of their said investigations, appellant came up into the room where they were, and that the deceased searched him at that time for arms. That on that occasion appellant told the constable and justice of the peace: "If you don't let me alone and let my business alone, I will kill you both." That on another occasion, about three weeks before the killing, appellant told the justice of the peace: "You all may catch me selling whisky. If you are going to adopt the plan you started in on I guess you will, because you will find somebody that won't tell a lie for me. But whenever you do, I tell you right now you are going to have a fight. I will kill both of you." That on another occasion, about a week before the killing, deceased had arrested a Syrian for unlawfully peddling without a license, and appellant in talking about that said that if deceased ever bothered him or meddled with him, or something like that, he would kill him. Another witness testified that the day before the killing he presented an account against appellant for payment, and appellant told him that "Jack" had been pushing him so in his business he did not have any money right then but that he would pay it the next day; that if they did not let up on him, business was going to pick up. Deceased was called Jack. Another witness swore that immediately after appellant fired the shot which killed the deceased, he said: "I told you I would kill you." Another witness swore that appellant, when leaving the scene of the killing, said he was getting tired of those G—d d—d s—s of b—s running over him. All the above testimony was given without any objection by appellant.

Over his objections, the court permitted J. R. Hampton to testify that in March before the killing on October 2d, following, he met appellant on the train coming from Fort Worth; that appellant asked him to get some package he had in the vestibule. There were three of them, two large ones and one small one, "and he said it was whisky and he wanted to take it out on the side next to the hotel when we got down there. He said he was selling whisky and the first man that interfered with him, he was going to kill him." And, over his objections, the court also permitted J. R. Bogard to testify that he had a conversation with appellant on the train about the middle of June before the killing; that appellant had a sack in his hands with some bottles of beer in it, so he stated to him, and remarked: "They sell it pretty open here. We can't do that in Naples"; and further: "Everyone knows my business. I don't hide it. I gamble and sell

whisky for a living, but I will shoot the heart out of the s—n of a b—h that turns me in." Over appellant's objections, the court permitted W. F. Smith to testify that about a week or ten days before the killing appellant was in his barber shop getting shaved and remarked that he was going to quit "bootlegging," and the witness replied: "I am mighty proud of it," that they talked on a minute or two, and he said: "By G—d, Joe Davis and Jack Knieff wasn't going to make him quit; he was going to do it anyhow." Appellant's objections to the testimony of these witnesses was that it was irrelevant, immaterial and too remote and not a threat against the life of deceased. We think this testimony was admissible. We have had occasion repeatedly and recently to discuss the admissibility of such testimony and to collate the authorities thereon and state and discuss the rules applicable in Howe v. State, 77 Texas Crim. Rep., 108, 177 S. W. Rep., 497, and Hiles v. State, 73 Texas Crim. Rep., 17. We deem it unnecessary to again state or discuss them, or cite these authorities.

Appellant testified on cross-examination in response to the district attorney's questions that he had been charged with assault to murder when he shot a fellow down in Cass County. That he was then under indictment charged with attempt to rob, and also for the felony of "bootlegging"—selling whisky. He had plead for a suspension of sentence. At the time he testified that when he lived in Cass County he shot a fellow down there and was charged with assault to murder, his attorney objected, because it was immaterial and irrelevant and calculated to prejudice the jury gainst him. The court overruled his objections and admitted the testimony solely as affecting his credibility as a witness. The court states that at the time of said objections and when said testimony was admitted, the question of the time when that occurred did not arise, and the court was not made aware that that incident occurred some twelve years before until the motion for a new trial was filed, and that no objection at the time was made because it was too remote. Under the circumstances this bill presents no error.

Appellant's wife swore that some short time, twenty or thirty minutes, before the killing the deceased came to her residence, which was right in the town, and insulted her by, in substance, then asking her to have sexual intercourse with him. That in a few minutes after this her husband came home, when she told him of it. He testified that his wife so told him and that he at once got his gun, hunted deceased down and shot and killed him because of this insult to her. As stated, the jury acquitted him of murder and found him guilty of manslaughter. The sole ground on which he was convicted of manslaughter was this claimed insult to his wife. One of the State's witnesses in rebuttal on cross-examination testified that deceased's reputation at the time he was killed, and for some time before, for chastity and virtue, was bad. The State introduced no testimony at all on the point. The order of testimony was, first, the State introduced its main witnesses to establish the offense and rested. Thereupon the ap-

pellant introduced his testimony and rested. The State then introduced its rebuttal testimony and rested. After this appellant produced three witnesses, who would have testified that they knew the general reputation of deceased for virtue and chastity and that it was bad. The State objected to this testimony because it was not in rebuttal of any the State had introduced. It was not in rebuttal, as claimed by the State. The statute (art. 718, C. C. P.), however, is that the court shall allow testimony to be introduced at any time before the argument is concluded if it appear that it is necessary to a due administration of justice. This court has repeatedly held under this statute that large discretion is allowed the trial judge in admitting, or refusing to admit, testimony not in rebuttal, after all other evidence is in but before the argument is concluded, and the trial court must necessarily have large discretion in the matter. If appellant had been convicted of murder we would reverse the judgment, because this testimony was excluded, but as the testimony, if admitted, would have gone solely to support, in a measure, the testimony of appellant's wife of the claimed insult to her by deceased, and as the jury believed her testimony, and thereby appellant was acquitted of murder and found guilty of only manslaughter, and all the testimony, without any doubt, would show him guilty of manslaughter, no injury occurred to him by reason of the court's excluding such evidence, and the court's ruling, therefore, became harmless.

There is no other question in the case, and the judgment is affirmed.

*Affirmed.*