### John Patten v. The State.

No. 5215. Decided February 12, 1919.

**1.—Assault to Murder—Aggravated Assault—Charge of Court.**

In the absence of a requested instruction or exception taken at the proper time to the failure of the court to submit the law of aggravated assault, upon trial of assault to murder, it will not be considered reversible error and is not of such fundamental nature to require reversal.

**2.—Same—Newly Discovered Evidence—Amended Affidavits.**

Where the amended affidavits attached to the motion for new trial alleged that while the witnesses talked with counsel for appellant during the trial, they rather evaded telling him what they knew, as they did not care to antagonize the police force, but did not state what occurred between them and the counsel, or what the evasion was, if any, and the record is silent as to the defendant's version as to what occurred between himself and these two witnesses who were not placed on the stand during the trial, there was no error in overruling the motion asking a new trial on the ground of newly discovered evidence. Following White v. State, 76 Texas Crim. Rep., 612, and other cases.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of assault to murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*J. M. Gibson,* for appellant.—On charge of court in failing to submit aggravated assault: Sampson v. State, 181 S. W. Rep., 193; Debth v. State, 187 S. W. Rep., 341.

On question of newly discovered evidence: Sanchez v. State, 156 S. W. Rep., 218.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—The jury allotted appellant ten years in the penitentiary for assault to murder.

The State's case, in substance, is that two officers, Riney and Hight, were on duty on the streets of Houston, and saw a party in front of a door on the sidewalk who called somebody a "God damned son-of-a-bitch," and as he did so holloed as loud as he could yell. The officers were within two-thirds of a block from the party making the remark. This was on the public street. The party then came in the direction

of the officers, and got within about two feet of Riney, who took one or two steps in front of him and asked, "What is the matter with you? What are you raising all this noise about?" Appellant looked up and saw the parties were officers, they being in uniform and having brass buttons and a big star on their breast. He was within two feet of Riney, and looked at him and made a move for his hip pocket. The policeman tried to catch his hand and caught his coat. Appellant jerked loose and ran into the middle of the street, and when he got to the car track dropped his pistol. It was a pearl-handled pistol. Riney remarked to the other policeman who was with him: "He has got a gun, let's get it," and they took after and chased him down San Felipe Street to the same restaurant out of which appellant had come. Appellant came back on the sidewalk and turned up Heiner Street toward the ball park. Following after appellant Riney got within about fifteen feet of him, when he turned and said to Riney: "Stop, you white son-of-a-bitch," and at the same time shot at Riney. Riney says appellant shot twice before he got his pistol out. The first shot entered his breast above the right nipple and is still in his body. The second shot cut a button from his coat in front, and a third shot entered the left lapel of his coat, but did not enter the body. Appellant fired three other shots, neither of which struck Riney. Riney fired two shots. Appellant then ran, and Hight, the other policeman, fired two shots at him as he ran away. This is the substance of the State's case.

Appellant received one slight wound, a bullet going through his right hand between his thumb and index finger. Appellant says that about 11 or 12 o'clock he was fixing to close his establishment when he thought someone called him from the outside, and someone came in to get some change; that he had his money on the counter, and the party coming in snatched something and ran. He did not know what it was, but he ran after him, followed him to a restaurant, went in but failed to find the party, and started across the street and stumbled and fell. At this juncture he heard somebody say "Catch that nigger, he has a gun." Appellant then turned, and as he did somebody was shooting at him. He says when he reached the corner of the street he threw up his hands to surrender, and that is the time he got shot through the hand, and it was at that time he shot the officer. Appellant was drinking; if not drunk, at the time. This sufficiently presents the two theories made by the evidence.

The court charged the jury with reference to assault to murder and self-defense. There was no charge given on aggravated assault, none asked and no exception taken to the failure of the court to give such charge. In fact, the record does not contain a bill of exceptions except to the overruling of the motion for a new trial. In the amended motion for new trial appellant criticises the charge for failure to submit aggravated assault. The writer is of opinion that aggravated assault should have been charged, but in the absence of requested instructions or exceptions taken at the proper time to the failure of the court to so

charge, it will not be considered reversible error; at least the failure to so charge is not of such a fundamental nature as to require a reversal of the judgment.

Attached to appellant's amended motion for new trial are the affidavits of two witnesses in which appellant sets up newly discovered testimony. These witnesses were examined by appellant's counsel before the trial, and were in attendance upon court during the trial, and under the rule. It is shown that appellant's counsel talked with these two witnesses and after doing so did not place them upon the stand. Appellant in his affidavit attached to the motion for new trial says he did not talk to them and does not know why his counsel failed to use them before the jury. We are of opinion that as the matter is presented, the statements of these witnesses can not be treated as newly discovered evidence. Both witnesses filed an amended affidavit to their original statement to the effect that while they talked with counsel for appellant during the trial, they rather evaded telling him what they knew as they did not care to antagonize the police force. What occurred between them and counsel is not stated, or what the evasion was, if any. Appellant's counsel did not file an affidavit, and the record is silent as to his version as to what occurred between himself and these two witnesses, but from no viewpoint of this motion can this be considered newly discovered testimony. Appellant was required to use diligence, which he did, in securing the witnesses, but says although he had the witnesses present and had them examined, that he was unaware of what they would testify, leaving that matter to his counsel, who failed to place them on the witness stand after discussing the case with them. As before stated, this showing does not bring it within the rule of newly discovered testimony. See White v. State, 76 Texas Crim. Rep., 612; Howe v. State, 77 Texas Crim. Rep., 108. These cases seem to be in accord with the unbroken line of authorities. Further citation will not be made.

As this record presents itself we are of opinion that the judgment should be affirmed, and it is accordingly so ordered.

*Affirmed.*