## GORDON v. STATE. (No. 5883.)

(Court of Criminal Appeals of Texas. Oct. 20, 1920.)

1. **Criminal law** ⚖══1156(3) — **Denying new trial for newly discovered evidence reviewable only for abuse of discretion.**

The decision of the trial judge overruling a motion for new trial, based on newly discovered evidence, is binding upon appeal, unless the appellate court is satisfied that the trial court abused its discretion.

2. **Criminal law** ⚖══939(1)—**Defendant, confined in jail, must use diligence to procure testimony.**

The rule denying a new trial for newly discovered evidence, where due diligence to procure the evidence for the first trial was not shown applies, notwithstanding defendant is confined in jail, at least unless it appears that there was no outside assistance available.

3. **Criminal law** ⚖══939(1)—**Counsel's lack of diligence is imputed to accused.**

Where accused had counsel during the several months he was confined in jail before trial, the want of diligence of that counsel to procure testimony is chargeable to accused, so that a motion for new trial, presented by different counsel, should show that the counsel who conducted the trial did not know of the new testimony.

4. **Criminal law** ⚖══941(2)—**Newly discovered evidence held cumulative.**

Where there was testimony at the trial that a man other than accused shot deceased, and it appeared that the other man's name was used in the altercation preceding the shooting, and that deceased, before his death, first accused the other man, but when both were brought before him, identified accused, newly discovered evidence by a witness of the shooting that the shot was fired by the other man is cumulative and the appellate court will generally not set aside the verdict for newly discovered evidence of that character.

5. **Criminal law** ⚖══944—**Abuse of discretion held not shown in denying new trial because of improbability of new evidence.**

Where deceased before his death, and his companion within a few hours after the shooting, positively identified accused as the man who fired the shot, and other witnesses also identified him, the appellate court cannot say that it was an abuse of the trial court's discretion to deny a motion for new trial for new evidence that the shot was fired by another than accused on the ground that such evidence was improbable.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

L. C. Gordon was convicted of murder, and he appeals. Affirmed.

D. G. Hunt, of Eastland, for appellant.
Alvin M. Owsley, Asst. Atty. Gen., for the State.

MORROW, J. The judgment condemns the appellant to confinement in the penitentiary for 25 years for the murder of Rowe Pollard.

The deceased, a young man about 20 years of age, was wounded by a pistol shot while he was on the streets of Ranger, late in the night. He died from this wound a short time afterward in a sanitarium. The principal issue upon the trial was the identity of the slayer, and on this appeal complaint is made of the refusal of the trial court to set aside the verdict rendered against appellant, he insisting that newly discovered evidence set up in his motion for a new trial entitled him to the relief. An affidavit made by Lorain Spellman is relied upon. In the affidavit she states that she is 18 years of age, and that she and a girl called Dorothy May, in company with one Smith, all of whom resided in Ranger, were on the street together, and that she saw the shot fired by one Bob Dalton; that she inquired of the deceased who shot him, and was told by him that his assailant said his name was Bob Dalton. The witness also said she saw Bob Dalton run off. At the time the affidavit was made, April 27, 1920, the witness was residing in Stephens county, near the scene of the homicide and the place of the trial.

The homicide took place on November 6th. The indictment was presented in the same month. The appellant was under arrest at the time, and remained in jail. The trial took place on the 24th of March. It appears that the trial was conducted upon behalf of appellant by two attorneys. These attorneys do not appear upon the appeal, it being prosecuted by a different counsel, who was employed after the trial, and whose name is signed to the amended motion for a new trial. To this he attaches his affidavit, in which he says that he was employed after the trial, and that he then obtained a stenographic report of the evidence, and from that learned that a certain witness testified that a man and two women were near the scene of the difficulty; that on April 28th, through the aid of a deputy sheriff of Stephens county, he located Lorain Spellman, who made the affidavit to which reference has been made, and from her learned the names of her companions, who, together with Lorain Spellman, were known to the officer from whom the information was obtained, before and after the tragedy, but that the limited time remaining after meeting the witness Spellman before the motion would be passed on rendered it impracticable to secure the attendance or the affidavits of her companions on the night of the homicide.

[1] The trial judge having overruled the motion, his decision is binding upon this court unless satisfied that the trial court abused the discretion vested in it. Gray v. State, 65 Tex. Cr. R. 204, 144 S. W. 283;

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Burns v. State, 12 Tex. App. 270; Taylor v. State, 75 Tex. Cr. R. 20, 169 S. W. 672.

[2] To entitle him to the relief sought, it was incumbent upon the appellant to make it clear by his motion that he had not been wanting in diligence to secure the absent testimony, and to show that he was not aware of the existence of the testimony before the trial. This rule prevails notwithstanding the accused is in jail, at least unless it appears that there was no outside assistance available. Vernon's Texas Crim. Statutes, vol. 2, p. 779, note 4, and cases cited.

Coleman Puckett, a youth 18 years of age, and the deceased, residing in Midland, visited Ranger, and were together upon the street at about 2 o'clock at night, awaiting the arrival of a train to return to their home. They were near a dance hall, and were standing in front of a restaurant, which was open and wherein lights were burning, and a man, a stranger to both of them, appeared upon the sidewalk. When first observed he was talking to some men some 30 feet away. Later, he approached and said to Pollard: "You have been talking about me." Pollard replied: "I don't know you; never saw you before." The man said: "When I walk on the street I walk with ladies and gentlemen, and I am not going to have you talking about me." Pollard repeated he did not know him. Pollard made no demonstration to fight. A scuffle ensued, profane language being used, and the stranger shot Pollard, and walked away. The deceased had visited the dance hall, though the evidence fails to disclose that he had any conversation with the appellant, or any transaction with him, or that he had seen him at all. The appellant had also been in the dance hall, was under the influence of intoxicating liquor, and in possession of a pistol, according to some of the evidence. Puckett was taken to the police station, and there identified the appellant as the assailant of Pollard. This occurred some few moments after the tragedy. According to Puckett, two women passed while the appellant was cursing. The deceased told the witness before he was removed from the scene of the homicide that the assailant said his name was Bob Dalton, and the deceased made a similar statement to the doctor. While the witness was at the city hall, Bob Dalton, who resided in Ranger was brought in. The witness declared that he had never see Bob Dalton, and that he was not the man who shot the deceased, but that the shooting was done by the appellant.

Another witness testified that he saw the difficulty and heard some one remark: "If you say anything about Bob Dalton, or use Bob Dalton's name, I will kill you." A gun fired immediately, and he saw the appellant running down the sidewalk. Dalton was not present, according to this witness. He enumerated six other people whom he did see, including the deceased and his companion.

Other witnesses testified that they were present, and recognized the appellant as the assailant. The doctor testified that about an hour after the shooting, while the deceased was in the hospital on the operating table, Dalton was brought into the room, and deceased said: "No, he is not the man that shot me." Appellant was brought in, and the deceased said: "You were the man that shot me." During the conversation Bob Dalton said to the deceased, "Did I shoot you?" and deceased said, "No." Dalton said, "I am Bob Dalton." Pollard said, "You did not shoot me." As soon as appellant came in deceased said, "You are the man that shot me." Appellant said, "Are you sure of that?" When deceased repeated it appellant replied, "I guess I will have to suffer for it."

The appellant had been a soldier, and made a good record, and brought his officers to testify to his good reputation for peace and quietude. Dalton was shown to have a bad reputation. A witness named Cunningham, who was charged with theft and had been in jail with the appellant, testified that he was on the street about 70 feet away and saw Bob Dalton fire the fatal shot; that two girls were present. The witness said that he had related this incident to another inmate of the jail on a previous occasion, but had told the attorney for the appellant only on the day of the trial. It was shown that this witness and a man named Redwine were so situated in the jail that communication between them and the appellant was practicable. Dalton was described as a man much heavier than the appellant, and it was stated that there was no similarity in the size and appearance of the two men. Dalton was about three inches taller and much heavier.

[3] The appellant having counsel soon after his arrest, their knowledge of the witnesses and their diligence, or lack of diligence, to procure testimony, would be imputed to him. Patten v. State, 209 S. W. 664. There is no disclaimer by the attorneys who appeared upon the trial of the knowledge of the absent testimony, nor any statement by them of their reason for failure to discover or procure it. Several months elapsed between the time of the filing of the indictment and the trial upon which the conviction was had. The record indicates that there had been a continuance upon a former occasion. The motion affirmatively shows that the witnesses whose absence is made the basis of the motion were residents of Ranger before, at the time of, and since the homicide, save that the witness Spellman had in the meantime transferred her place of abode to a point in an adjoining county. The motion does not negative the fact that the appellant in person may have known that the witness Spellman and others named in his motion had seen the tragedy, and this, notwithstanding the fact that Cunningham, who claims to have been

present and who testified in his behalf, had been his associate in jail. Hensley v. State, 81 Tex. Cr. R. 620, 197 S. W. 869.

[4] The testimony of the absent witness was cumulative, and would have but supplied another witness to testify to the same matter that was embraced in the evidence of the witness Cunningham. Generally speaking, the court on appeal is not warranted in overturning the verdict for newly discovered evidence of this character. Branch's Ann. Texas Penal Code, § 203.

[5] The probable truth of the testimony of the absent witness was a subject for the consideration of the trial judge in the light of the evidence developed upon the trial, and this court would not, we think, in the present instance be justified in concluding that the trial judge was not warranted in overruling the motion upon this ground. Branch's Ann. Texas Penal Code, § 200, and cases listed.

No other question is presented in the record in a manner requiring its review.

Failing to discover error, we must order the affirmance of the judgment.