[Pending on writ of error in United States Supreme Court.—Reporter.]

[Case did not reach hands of Reporter until June, 1914.—Reporter.]

---

## Ed Jones, alias Ed Hodgkins, v. The State.

### No. 2780. Decided November 19, 1913.

### Rehearing denied February 4, 1914.

**1.—Murder—Evidence—Bill of Exceptions.**

In the absence of a bill of exceptions, the admission and rejection of testimony can not be considered on appeal.

**2.—Same—Newly Discovered Evidence—Motion for New Trial.**

Testimony introduced on account of newly discovered evidence set up in the motion for new trial must be filed during the term of court, and the state-

ment of facts of such testimony filed long after the adjournment of the term of court can not be considered on appeal.

**3.—Same—Accomplice—Charge of Court.**

The mere concealment of facts criminating in their nature does not constitute the witness an accomplice, and there was no error in the court's failure to charge thereon. Following Noftsinger v. State, 7 Texas Crim. App., 301.

**4.—Same—Charge of Court—Objections to Charge.**

Where the objections to the charge of the court were raised for the first time in appellant's brief, the matter can not be considered on appeal. Following Johnson v. State, 42 Texas Crim. Rep., 87, and other cases.

**5.—Same—Sufficiency of the Evidence—Conflict of Testimony.**

Where, upon trial of murder assessing the death penalty, the evidence, although conflicting, was sufficient to sustain the conviction, there was no reversible error.

**6.—Same—Statement of Facts—Bills of Exception—Want of Diligence.**

Where there was a want of diligence in the preparation and filing of the statement of facts and bills of exception, the same can not be considered on appeal, nor will the judgment be reversed and the cause remanded.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Claud C. Westerfeld* and *Ben Savage,* for appellant.—On question of accomplice: Williams v. State, 53 Texas Crim. Rep., 396, 110 S. W. Rep., 63.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—This conviction was for murder, the death penalty being assessed. There are no bills of exception in the record. All errors urged and complaints made of matters occurring on the trial are found in the motion for new trial. The second, third, fourth and fifth grounds of the motion insist that the court erred in its ruling admitting testimony. These questions can not be considered because exception was not reserved, and the matters are not verified as required by our procedure in order to authorize revision.

There are other grounds set up in the motion for new trial pertaining to alleged newly discovered testimony. It was undertaken to perpetuate these questions in a statement of facts, showing the evidence introduced on motion for new trial with reference to such newly discovered testimony. Under the decisions this can not be considered because it was filed long after the adjournment of the term of court— eighty odd days in fact. The rule has been adhered to in this court that evidence introduced in regard to matters set up in motion for new trial must be filed during the term of court. Under this rule the statement of facts in regard to these matters can not be considered.

It is contended also in motion for new trial that the witness Mary

Lott was an accomplice. We can not agree with counsel in this matter as this record presents that phase of the case. The witness Tolbert turned State's evidence under an agreement with the county attorney. He testified to a conspiracy followed by a cruel homicide for the purpose of robbery, and that he, appellant, with Jim Banks, alias Dirty Red, consummated that agreement by killing deceased and getting his money to the amount of two hundred dollars in currency. We deem it unnecessary to go into a detailed statement of this evidence; it is voluminous. The witness did detail it with minute circumstantiality. He was examined and cross-examined at great length, and described how they discovered the man with the money in the City of Dallas, drank with and induced deceased to treat the three; they followed him to Oak Cliff, where he had informed them he was going, and just before reaching the edge of Oak Cliff, at the end of the viaduct, they killed him by striking him twice on the head with an iron bar about thirty inches long and an inch and a quarter in diameter. They then dragged his body a short distance from the road or street in some weeds, where it was discovered. When this was done they returned to Dallas to the residence of Mary Lott, whom it is claimed is an accomplice. Mary Lott testified the three came to her house after she had retired, knocked upon the door; that she got up and admitted them. Sitting about the room they mentioned the fact that they had made some money easy, and said if they would do like they had done they would not have to work so hard. Upon inquiry by Mary Lott they informed her they had gotten this money by "turning" over a white man. In other words, the substance of it is that they had killed a white man and got his money. It is also shown that they divided the money before leaving the house the next morning. Tolbert testified they divided the money at the house, he getting fifty dollars, and that he understood appellant was to receive the larger portion, perhaps half of it. The witness Howard to some extent corroborates him as to the division of the money. Mary Lott testified that two of three parties rented from her a room which they occupied for a week, and at the end of the week they paid the rent and went away. The third one of these parties spent the night and paid for his occupancy of the bed the next morning. The cross-examination of this witness was rigid and critical, evidently for the purpose of discrediting her in every way they could by such examination. This is the substance of the evidence seeking to make her an accomplice, unless it be by the further fact that she was the paramour of the witness Howard. We are of opinion this evidence does not make Mary Lott an accomplice. It is true that she concealed her testimony, or at least did not let it be known for two or three months after the homicide. This would amount to a concealment of the evidence given on the trial. Mere concealment of facts criminating in their nature does not constitute the witness an accomplice. This we understand to be the rule announced in Noftsinger v. State, 7 Texas Crim. App., 301. See Branch's Criminal Law, section 319, for collated cases. It is not shown that she was paid room rent with the stolen money.

In an able and exhaustive brief, which shows great research and ability on the part of appellant's counsel, it is contended there are reversible errors in the charge, and not only so but in the failure of the court to charge the law thought to be applicable to the facts which, if given, might have been beneficial to appellant. The trouble is, there were no exceptions taken to the charge during the trial; none presented in motion for new trial or by bills of exception. They are raised for the first time in appellant's brief in this court. As these are presented they can not be considered under our decisions. They are not of that fundamental nature which would require this court to revise for the supposed errors. It is well known that the writer has not been in harmony with this line of decisions from their inception. Johnson v. State, 42 Texas Crim. Rep., 87. There has been an unbroken line of decisions sustaining the Johnson case. In three or four of these the writer wrote dissenting opinions, but his views have not obtained. If the errors of omission or commission complained of in the brief were of such a radical nature as to authorize a conviction not justified by the indictment, this court would unhesitatingly consider same and reverse. Such has been also the recognized rule by decision.

It is claimed that the evidence is not sufficient. Whatever we may think about that question the testimony is such that the jury was authorized to reach the conclusion they did. There were two theories strongly presented; the jury could believe either, and they exercised their judgment in favor of the State. We are not authorized to disturb the verdict under such state of facts. Enough has been stated, so far as the State's side of the case is concerned, to show a cold-blooded killing by somebody. The State connected this up with the accomplice Tolbert whose evidence is corroborated. The defendant testified that he had nothing to do with the matter, and supported his testimony fairly well. He also introduced evidence showing that the killing could have been and was done by another party or other parties. Some of the facts are rather persuasive. Appellant's testimony also shows, and from experts, that the deceased may not have been killed and probably was not killed by the use of a blunt instrument, but by the use of a sharp instrument. If the deceased was killed by the use of a sharp instrument the State's case would fail, because Tolbert swore deceased was killed with an iron bar. The wounds on the head, there being two, either fatal, are shown by the embalmer and other testimony to have been inflicted, at least more than probably so, by a sharp instrument. Defendant's testimony places a man named Nelson in such position that he not only could but probably did do the killing, and with an ax. It is not the purpose of this opinion to go into the details of the testimony of either side. These matters were before the jury, and whatever might be the personal belief of the writer, we are of opinion the jury was authorized to reach the verdict they found.

The judgment will be affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—The judgment herein was affirmed some time since and appellant has filed a motion for rehearing. In the opinion of affirmance it was stated the record contained no bills of exception. The motion for rehearing is not accompanied by bills of exception, but is accompanied by an affidavit of Judge Crawford, the district judge who tried the case. The bills of exception and statement of facts bears file mark of July 3. The court adjourned on the 5th day of April. The latter part of June or first of July Judge Crawford went to Galveston to spend his vacation, at which time there were several statements of facts and bills of exception in cases tried before him to be approved. He says: "Before leaving Dallas I advised the county attorney that in the event there arose any disagreement as to statements of facts or bills of exception in any case between the attorneys representing the State and the defendant, that I would immediately return from Galveston and take the matter up of approving the statements of fact and bills of exception with counsel for both sides; and in this connection directed the county attorney and in the event of such disagreement that he at once notify me at Galveston of such disagreement and that I would return to Dallas for the purpose above stated. While in Galveston I received no notification of any kind or character as to any disagreement upon any statement of fact or bills of exception in any case in my court. That the bills of exception in the case of Ed Jones, alias Ed Hodgkins, Appellant, v. State, were filed in the Criminal District Court No. 2 on July 3, 1913. I am advised by Messrs. Westerfield and Savage, counsel for the defense, that the statement of facts and bills of exception were presented to the county attorney of Dallas County some ten or fifteen days prior to the time they were filed in court. I returned from Galveston about the 20th or 21st of July, and, on the 21st or 22nd I was stricken with appendicitis and taken to the Paul Sanitarium, and there remained for a period of about two weeks, and after being removed from the sanitarium was confined at my home for a period of about one week longer. Upon my return to the bench the bills of exception, and, I believe, the statement of facts were presented to me and approved by me." The statement of facts shows to have been approved on August 11th, and it seems the bills of exception, from the statement of the judge, were approved the same time. In writing the original opinion the writer did not notice that the statement of facts was not approved by the judge until the 11th of August, and until the motion for rehearing was filed this matter was not observed. Therefore, the case was passed on upon the theory that the statement of facts was filed within the ninety days, or rather within the time authorized by law.

The filing of the statement of facts and bills of exception on the 3rd of July would not meet the question of diligence. The filing of the statement of facts is not authorized until approved by the judge,

and would have no force and effect as bills of exception and statement of facts until so approved. If the failure to get the statement of facts and bills of exception into the record within the time required arose from no fault of the defendant, and they were subsequently approved by the judge as being correct, they would be considered, but if he was for any cause, through no fault of his, deprived of a statement of facts, the judgment would be reversed for that reason. Appellant's counsel do not controvert the statements of the district judge in any way, but attaches it to his motion for rehearing, therefore, taking the statement of the judge as showing the real condition of affairs, and as being correct, he could have been reached at Galveston in ample time to have had the statement of facts and bills of exception approved and filed before the 5th of July, which seems to have been the last day in which they could have been filed under the ninety days rule. It is shown that the time was extended to the complete ninety days, but even had it not been, it would seem under our practice laid down by the decisions of this court in felony cases that a party would have ninety days as a matter of law. It appears further that the statement of facts and bills of exception were presented to the county attorney ten or fifteen days before being filed on the 3rd of July. The district judge was not notified so that he might return and look over the matters, nor did counsel for appellant seek the district judge or send him the bills of exceptions and statement of facts. This shows a want of diligence under all of the authorities in securing the approval of the judge. Had he been notified he would have returned, as he states, or in the absence of notification, as he had indicated, counsel could have gone to Galveston. Under the decisions and the practice this does not show diligence to secure the evidence and the bills of exception, therefore, the bills of exception could not be considered if presented to this court. The statement of facts even is not in condition to be considered by the court, but the writer overlooked that fact and it was not called to his attention that the statement of facts was filed on the 11th of August, when same should have been filed by the 5th of July. The district judge did not go to the sanitarium on account of sickness until after the 21st of July, therefore his sickness and absence would not meet the question of failure of diligence on the part of appellant.

The motion for rehearing will be overruled.

*Overruled.*

[Case did not reach hands of Reporter until June, 1914.]