### Pearl Sorrell v. The State.

#### No. 3931. Decided April 5, 1916.

#### Rehearing denied May 31, 1916.

1.—Murder—Continuance—Motion for New Trial—Statement of Facts—Practice on Appeal—Presumption.

Where, upon appeal from a conviction of murder, the record disclosed that the court below heard evidence both on the application for continuance and the motion for new trial based thereon, but this evidence was not disclosed by the record, it must be presumed by this court that the evidence heard in the court below clearly justified the action of the court in overruling said application and motion, and that in the absence of a proper bill of exceptions or statement of facts of the evidence introduced and filed during term time, there was no reversible error. Following Black v. State, 41 Texas Crim. Rep., 185, and other cases.

2.—Same—Continuance—Motion for New Trial—Practice in District Court.

But even if this court considers the defendant's bill of exceptions not filed in term time but nearly two months after the term of the court had adjourned; still as qualified by the court, by which the defendant is bound, there was no merit either in the application for continuance or the motion for the trial based thereon; as the same showed a want of diligence; that the absent witness was a transient person; that the testimony claimed was not probably true; that the witness would not have testified as claimed, and for other grounds.

3.—Same—Continuance—Motion for New Trial—Rule Stated—Discretion of Court.

No application for a continuance shall be granted as a matter of right, and

the truth as well as the merits thereof and its sufficiency is addressed to the sound discretion of the court; neither shall a motion for a new trial be granted after an application for a continuance is overruled, unless the testimony of the absent witness is material and probably true, and this is left to the sound discretion of the court.

### 4.—Same—Continuance—Rule Stated—Diligence.

The law requires a rigid compliance with its exact terms prescribed for an application for continuance, and if there be a lack of diligence, apparent from the application or otherwise, its mandate is inexorable and the trial must proceed. Following Skipworth v. State, 8 Texas Crim. App., 135.

### 5.—Same—Rule Stated—Continuance.

It devolves upon the defendant to show, affirmatively and distinctly, that he has used all the diligence required by law to obtain his witness, and the State is not required to show a want of diligence in opposition of a continuance. Following Walker v. State, 13 Texas Crim. App., 618.

### 6.—Same—Continuance—Burden on Defendant.

The onus is upon the defendant to establish the exercise of diligence in support of an application for a continuance, and the burden is upon him or the party seeking a continuance to show himself entitled to it by definite, exact and certain averments. Following Long v. State, 17 Texas Crim App., 128.

### 7.—Same—Continuance—Inference—Presumption.

The courts will not supply by inference and presumption allegations not contained in an application for a continuance; the application must be complete within itself, and if presumptions are indulged in, they must be decided in favor of the rulings of the court. Following Massie v. State, 30 Texas Crim. App., 64.

### 8.—Same—Continuance—Rule Stated—Diligence.

The accused can not cease his diligence to secure his witness when the trial has begun, but he must continue it up to the very time, at least until the arguments are concluded. Following Mitchell v. State, 36 Texas Crim. Rep., 278.

### 9.—Same—Practice on Appeal—Motion for New Trial—Continuance.

This court will not reverse the judgment of the lower court, refusing a continuance or overruling a motion for new trial thereon, unless it is made to appear by the evidence adduced thereon that the proposed absent testimony was relevant, material, and probably true.

### 10.—Same—Continuance—Case Stated.

Where, upon trial of murder, it appeared from the record on appeal that the court below overruled defendant's application for a continuance on the ground of lack of diligence; that even if the witness had been obtained he would not probably have testified as claimed, and if he had it would have been untrue; that he was a transient person, and no affidavit was secured to the motion for new trial to show that the absent witness would testify as claimed by defendant, there was no error in overruling the motion for new trial.

### 11.—Same—Bills of Exception.

Where the bills of exception to the admission of testimony, the argument of counsel and the charge of the court were so qualified as to present no error, there was no reversible error.

### 12.—Same—Evidence—Conversation.

Where, upon trial of murder, defendant introduced testimony of a part of a conversation which the witness had with the deceased shortly before the homicide as to threats he made against defendant, the State on cross-examination had

the 'right to introduce in evidence the balance of the conversation of the deceased at the time.

### 13.—Same—Evidence—Bill of Exceptions.

Where the bills of exception were to the mere asking of some questions propounded by the State to the witnesses, to which the defendant objected, and the court sustained his objections, and the witnesses were not permitted and did not answer the questions, there was no reversible error. Following Huggins v. State, 60 Texas Crim. Rep., 214, and other cases.

### 14.—Same—Argument of Counsel—Rule Stated.

The rules pertaining to the argument of counsel as laid down by this court are well understood, and where the bills of exception to the argument of counsel failed to show any error, and the court, moreover, charged the jury not to consider the arguments of counsel to which defendant excepted, there was no reversible error. Following Mooney v. State, 76 Texas Crim. Rep., 539, and other cases.

### 15.—Same—Charge of Court—Requested Charges—Provoking Difficulty.

Where, upon trial of murder, the evidence raised the issue of provoking a difficulty, the court properly charged thereon, and besides the court correctly applied the law to the facts of the case, both in his main charge and defendant's requested charges which were applicable to the facts, there was no reversible error.

### 16.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, the evidence sustained the conviction, under a proper charge of the court, there was no reversible error.

### 17.—Same—Motion for Rehearing—Statement of Facts—Bills of Exception.

Where, for the first time, the appellant in his motion for rehearing moved to strike out all the bills of exception and the statement of facts in the record on the ground that they were not approved and signed by the trial judge, and prayed for a reversal of the judgment because he was deprived of these documents without fault on his part, but it appeared from the record, the affidavits, letters, etc., on file in this court that said motion was not well taken, the same is overruled.

### 18.—Same—Statement of Facts—Bill of Exceptions—Trial Judge—Want of Diligence.

Where it appeared from the record on appeal from a conviction of murder, that the regular judge had excused himself and a special judge had qualified and presided over all the proceedings of the trial, which consumed some five weeks, when the court adjourned, and the presiding judge became ill and some six weeks thereafter died; that defendant's attorneys did not use the proper diligence in getting the bills of exceptions and statement of facts approved by the judge who tried the case, or to prove up such bills by bystanders, or use proper diligence in getting the regular judge to take proper action in the premises, the motion for rehearing must be overruled.

### 19.—Same—Statement of Facts—Bill of Exceptions—Motion for Rehearing—Signature.

Where the judge who tried the case became ill after adjournment of the court, but was at times during his illness capable of transacting his business, and during the time of his illness consented that the clerk of the court sign the judge's name to the statement of facts and bills of exception, which was done, but soon thereafter the trial judge became worse and died, and said statement of facts and bills of exception were filed by defendant's attorneys, and considered by this court in affirming the judgment, and it appeared from appellant's motion for rehearing that the attorneys could have obtained either from the judge who tried the

case as special judge, or from the regular judge of the district, a properly signed statement of facts and bills of exception, by using proper diligence. Held, that the question as to whether the clerk of the court could sign the judge's name to these documents, under the circumstances, need not be decided and no opinion is given thereon.

**20.—Same—Attorney and Client—Statement of Facts—Bills of Exception.**

Where, upon trial of murder, defendant had a number of attorneys to represent him, and it appeared that after trial the preparation of the bills of exception and the agreement to the statement of facts were left to one of the attorneys and one of his law partners, who attended to the whole matter for the defendant and his attorneys, all were bound thereby, and the defendant and his other attorneys can not claim a want of personal knowledge as to these matters.

**21.—Same—Trial Judge—Successor—Bills of Exception—Statement of Facts—Mandamus—Estoppel.**

Ordinarily, the trial judge, whether special or regular, when alive and mentally and physically able to act, must sign and approve bills of exception and statements of fact arising during the trial, and this even after his time of office expires; but the defendant and his attorneys must use all diligence necessary to procure these documents; and where the trial judge died some six weeks after the adjournment of the court, his successor had the power and it would have been his duty upon defendant's application or his attorneys to have passed upon said bills of exception and statement of facts, and he could have been compelled by mandamus to do so. However, the defendant and his attorneys in the instant case failed to use proper diligence either to obtain the approval of the trial judge or his successor, and therefore can not complain of the action of this court in passing upon these documents although not regularly signed and approved by the trial judge or his successor, and the motion for rehearing to reverse the judgment must be denied, whether these documents are considered or stricken from the record.

**22.—Same—Decisions Not in Conflict—Practice in District Court—Cases Distinguished.**

The decision of this court in the instant case is in no way in conflict with the following cases on the question of approving statements of fact and bills of exception: Richardson v. State, 71 Texas Crim. Rep., 111; Porter v. State, 72 Texas Crim. Rep., 71; Allen v. State, 72 Texas Crim. Rep., 277; Kaufman v. State, 72 Texas Crim. Rep., 455; McGee v. State, 182 S. W. Rep., 309.

Appeal from the District Court of Smith. Tried below before the Hon. J. S. McIlwaine.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Lassater & Jentry, W. M. Imboden, B. B. Perkins,* and *George S. King,* for appellant.—On question where continuance is sought to support the testimony of a disinterested witness: Beard v. State, 115 S. W. Rep., 592; Askew v. State, 83 S. W. Rep., 706; Rucker v. State, 40 S. W. Rep., 991.

On question of testimony not probably true: Roquemore v. State, 114 S. W. Rep., 140; Sneed v. State, 100 S. W. Rep., 922; Thomas v. State, 101 S. W. Rep., 797; Morgan v. State, 113 S. W. Rep., 934; Bullington v. State, 180 S. W. Rep., 679.

On question of overruling application for continuance where testi-

mony is material: Baxter v. State, 150 S. W. Rep., 912; Creacy v. State, 166 S. W. Rep., 162; Wade v. State, 172 S. W. Rep., 215; Harris v. State, 172 S. W. Rep., 1146; Medford v. State, 174 S. W. Rep., 607.

Upon question of argument of counsel: Smith v. State, 117 S. W. Rep., 966; Bullington v. State, supra; Brailaford v. State, 158 S. W. Rep., 541; Millner v. State, 162 S. W. Rep., 348; Marshall v. State, 175 S. W. Rep., 154; McKinley v. State, 52 Texas Crim. Rep., 182; Davis v. State, 54 Texas Crim. Rep., 236.

Upon question of permitting district attorney to ask improper questions: Vick v. State, 71 Texas Crim. Rep., 50; Bullington v. State, supra.

Upon question of court's charge on self-defense: Terrell v. State, 53 Texas Crim. Rep., 604; Crenshaw v. State, 48 id., 77; Vinson v. State, 117 S. W. Rep., 846; Anderson v. State, 131 S. W. Rep., 124.

Upon question of trial judge signing bills of exception and statement of facts to render same valid: Lawrence v. State, 7 Texas Crim. App., 192; Ruston v. State, 15 id., 324; Johnson v. State, 16 id., 372; Spencer v. State, 34 Texas Crim. Rep., 238; Shafer v. State, 58 id., 646; Sargent v. State, 61 id., 34; King v. State, 129 S. W. Rep., 626; Rawls v. State, 150 S. W. Rep., 432; Sara v. State, 22 Texas C. App., 369; Summerlin v. State, 153 S. W. Rep., 890; Williams v. State, 150 S. W. Rep., 185.

On question of motion for rehearing may present the true condition of the record even after submission, etc.: Downs v. State, 7 Texas C. App., 483; Henderson v. State, 20 id., 304; H. & T. C. Ry. Co. v. Parker, 104 Texas, 163; King v. State, 59 Texas Crim. Rep., 511.

*C. C. McDonald,* Assistant Attorney General, *M. G. Sanders,* District Attorney, and *Norman & Shook,* for the State.—On question of court's charge: Sorrell v. State, 169 S. W. Rep., 299.

On question of statement of fact and bills of exception: Murphy v. State, 45 S. W. Rep., 719; Berry v. State, 75 S. W. Rep., 858; Douglas v. State, 138 S. W. Rep., 385; Roberts v. State, 136 S. W. Rep., 483, and cases cited in opinion.

On question of estoppel: Conger v. State, 140 S. W. Rep., 1112; Tinker v. State, 125 S. W. Rep., 890; Aud and Townsend v. State, 36 Texas Crim. Rep., 76; Jones v. State, 33 id., 7.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of murder, and his punishment assessed at five years confinement in the penitentiary.

This is the second appeal. The first is reported in 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299. A sufficient statement was there made, so that the questions now decided can be understood. If any additional statement on any question becomes necessary, we will make it. There is no substantial difference of the material facts or testimony on this trial from what was shown on the other appeal. The case this time

was tried substantially in accordance with the opinion on the other appeal, and all questions therein held error were avoided on this trial.

. This is at . least the third trial and conviction. The trial court granted a new trial after the first, and this court reversed the judgment on the second trial. All the previous trials were in Cherokee County, where the homicide occurred in July, 1910. After the reversal by this court, the venue was changed to Smith County, where this trial occurred.

Appellant made a motion for a continuance. This was at least his fourth application for a continuance. The State contends, and reasonably showed, that by his action, appellant secured two other continuances. The application this time was made because of the absence of three witnesses. The bill, as qualified, shows that pending the trial two of these witnesses appeared and testified. The record does not : disclose how their attendance was secured

The absent witness who did not appear and testify was Louis Jennings. The State vigorously and properly contested appellant's application on the grounds: of lack of diligence; that the witness was a transient person; that the testimony appellant claimed he would give was not probably true; and that, even if present, he would not testify as claimed; and on other grounds. The appellant replied to the State's contest. The record discloses that the court heard evidence on this contest. Whether there was additional evidence from the affidavits filed by the respective parties is not definitely disclosed. If there was additional testimony heard, the record does not disclose what it was. The overruling of said application and the absence of the witness, was made a ground for a new trial by appellant in his motion therefor. The State again contested that ground of this motion. The appellant replied thereto. This motion was acted upon by the court five days after the verdict and judgment. The record discloses with certainty that the court heard evidence at that time on said ground of appellant's motion. What that evidence was is not disclosed by this record. Under these circumstances, in accordance with the long line of uniform decisions of this court, we must presume that the evidence heard clearly justified the action of the court, and that in the absence of a proper bill or statement of facts of the evidence introduced and filed during term time, we can not do otherwise than hold that the action of the court presents no error. Black v. State, 41 Texas Crim. Rep., 185, 53 S. W. Rep., 116; Reinhard v. State, 52 Texas Crim. Rep., 59, 106 S. W. Rep., 128; Jarrett v. State, 55 Texas Crim. Rep., 550, 117 S. W. Rep., 833; Mikel v. State, 43 Texas Crim. Rep., 615, 68 S. W. Rep., 512; Williams v. State, 56 Texas Crim. Rep., 225, 120 S. W. Rep., 421; Probast v. State, 60 Texas Crim. Rep., 608, 133 S. W. Rep., 263; Tarleton v. State, 62 S. W. Rep., 748; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967; Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 996. See, also, Jordan v. State, 10 Texas, 502; Sharp v. State, 6 Texas Crim. App., 650. It is unnecessarily to collate

the large number of decisions by this court down to this very date following these decisions.

However, we will discuss the question further on its merits. The claimed testimony of the absent witness, upon consideration of all the other testimony in the case, evidently if he would have testified at all as claimed by appellant, is not all of what he would have testified. Perhaps it was not necessary for appellant in his application to state all the witness would have testified, but merely to state, as he did, such part of what he claims he would have testified which would tend to be in his favor. We think, without stating it, that as stated by appellant, if he would have so sworn, it would be considered as material in his favor. Appellant's bill on this subject was not presented to, nor acted upon by the trial judge, until nearly two months after the term of court had adjourned. The court, as stated, had heard the motion for a continuance, and the motion for a new trial on that ground, and had heard all the evidence on the trial, and, of course, whatever evidence was introduced in the contest of both motions, and from all this was prepared to make, and did make, his explanation and qualification of the bill, which is quite lengthy, so that it could be understood by this court. We will not give all of it, but the substance of it. Appellant in no way contested the court's qualification, and is, therefore, under all the authorities, bound thereby.

The substance of the court's qualification was: · (1) That the case had been pending over five years, and the appellant had obtained three previous continuances, the first on account of the absence of his brother, who never afterwards attended any of the terms of court, and never testified. That about two hundred witnesses attended the trial at each term, and he deemed it probable that at no time could the attendance of all witnesses be had. That said witness Jennings was served with · a subpoena in Cherokee County before the July term, 1915, and attended that term. The motion for a continuance itself shows that no process had ever been issued or served for said witness by appellant until for said July term. (2) That the court believed said witness was a transient person and not likely to be had at any term of court, unless he was then in Navarro County. While that point was contested, the testimony was amply sufficient to authorize the court to conclude as he did. (3) That the testimony expected to be had from said witness, under the circumstances of its discovery, induced the court to believe that the witness would probably not testify as claimed in the application; and that if he did so, his testimony would be untrue. This also was a contested issue, but the record was sufficient to justify the court in his conclusions. (4) That it was known that it would take five or six days to try the case, and he believed, with proper diligence, if the witness was in Navarro County, as the application alleged, his attendance could be secured. (5) That appellant had no process issued to Navarro County until the third day of the trial. In the meantime, the State had process issued to Dallas County for the witness. (6) That the evidence of Brown and Charley Jen-

nings, together with their affidavits to appellant's answer to the contest of his motion for a continuance, showed that the absent witness told them he was going west to pick cotton and would remain until after cotton picking time. That the court knows this would have been as late as December 1st, and the application showed that one or both of these parties, Brown or Jennings, communicated with defendant, and that they had the information two or three weeks before the trial, and their testimony did not exclude the idea that they told defendant that the witness would be absent until after adjournment of this court, and defendant made no effort to prevent the witness from leaving or to have him returned. (7) That no affidavit of the absent witness accompanied the motion for a new trial, although the hearing on the motion was five days after the verdict was rendered. (8) That, on Saturday morning, before the court charged the jury and arguments had begun, and some thirty-four hours before the verdict was returned, one of the attorneys for the State informed one of the attorneys for appellant that said witness was in Collin County, between Plano and McKinney, and the defendant did not then have any process issued for said witness, and made no motion to postpone to procure him either at the conclusion of the evidence Friday night, or when he got this information. That, in addition to this, no witness on the trial testified that said absent witness was anywhere about the scene of the homicide, or in the neighborhood thereof, when it occurred.

The statute (art. 608, subdiv. 6, C. C. P.), expressly provides that no application for a continuance "shall be granted as a matter of right"; that the truth as well as the merits thereof and its sufficiency "shall be addressed to the sound discretion of the court called to pass upon the same"; but that if a defendant is convicted, and it appears on the trial that the absent witness's evidence was of a material character, and the facts set forth in his application were probably true, a new trial should be granted. All this, as the decisions uniformly hold, must necessarily be left to the trial judge, who sees and hears the whole proceeding and all the witnesses. It is true his discretion is not an arbitrary, but a judicial one. In addition to the statute, the rules applicable to a continuance have been laid down by many of the decisions of this court and have been announced by Judge White in his Ann. C. C. P. We will restate some of them.

"The law requires of a defendant a rigid compliance with the exact terms prescribed for such applications, and if there is a lack of diligence, apparent from the application or otherwise, . . . its mandate is inexorable and the trial must proceed." Skipworth v. State, 8 Texas C. App., 135.

"We know of no rule of law which requires the State to show a want of diligence in opposition to a continuance. It devolves upon the defendant to show, affirmatively and distinctly, that he has used all the diligence to obtain his witness required by law." Walker v. State, 13 Texas C. App., 618.

"The *onus* is upon the defendant to establish the exercise of dili-

gence in support of an application for a continuance. * * * The burden is upon the party seeking a continuance to show himself entitled to it by definite, exact and certain averments." Long v. State, 17 Texas C. App., 128.

"Neither will this court, nor the trial court supply by inference and presumption allegations not contained in an application for a continuance which should be stated therein. The application must be complete within and of itself in order to require this court to say it was erroneously refused. Presumption when indulged will and must be in favor of the rulings of the court in reference to the matter complained of, and not against same." Massie v. State, 30 Texas C. App., 64.

The cases unquestionably establish the rule that an accused can not cease his diligence to secure his witness when the trial begins, but must continue it up to the very time, at least, till the arguments are concluded. (Mitchell v. State, 36 Texas Crim. Rep., 278.)

"The court on appeal will not revise or reverse the judgment of the lower court refusing a continuance, and the overruling of the motion for new trial based upon the application for continuance, unless it is made to appear by the evidence adduced at the trial, that the proposed absent testimony was relevant, material and probably true." Sec. 647, White's Ann. C. C. P., citing a large number of cases.

We think all these rules are clearly applicable herein. Appellant claims that he never discovered this witness, or his purported testimony until about five years after the homicide, although he claimed the witness lived in the neighborhood where the killing occurred and claimed to have been present and heard and saw what occurred at the time of the killing. He had had at least two trials of his case before he claimed to have discovered this witness, and there had been several continuances besides. That a large number, some two hundred witnesses, attended the trials and the court when the case was not tried. The evidence heard by the judge clearly justified him to believe that, even if the witness had been obtained, he probably would not have testified as appellant claims he would, and that, if he had so testified, his testimony would have been untrue. In addition, the evidence clearly justified the judge to find, as he did, that the diligence was not sufficient to entitle him to a continuance. That he actually learned some two or three weeks before the trial, or by any sort of diligence could have so learned, that the witness would be absent and not attend the trial when it was tried, and after learning this, he used no process or diligence whatever to prevent the witness going off, nor to secure his attendance at the proper time. Also, that he waited three days after he learned that the witness was not present, and his motion for a continuance had been overruled, before he had any process whatever issued to where he claimed his information was the witness could then be found. The record in no way excludes the idea that, if he had then had process promptly issued for the witness, he could not have been found within that three days and his attendance secured. And,

further,· that at least a day or longer before the trial was finally concluded, he was informed that said witness was in Collin County; yet he then had no process issued for him, and made no application to postpone the case until he could ascertain whether or not he could then procure him, and the evidence substantially shows, and the trial judge so held, that the witness was a transient. And, further, that, although five days elapsed from the time the verdict was rendered until the court acted on his motion for new trial, he did not procure the affidavit of his absent witness to show that he would testify as claimed by him. So that, under no contingency, did the court err in overruling his motion for a continuance, nor in refusing him a new trial on that ground.

Appellant has some thirty-five other bills. Several of them are to the admission of some testimony; others, to questions asked by the State, but not answered by the witnesses; some others to very brief statements in arguments by the different attorneys representing the State, they consisting of only from one to three lines of typewritten matter; still others, to objections to the court's charge and to the refusal of the court to give some of his special charges asked. The court, before approving many of his bills, explained and qualified them. We have considered each and all of his bills. It will be unnecessary ·to now take them up separately and discuss them. We think none of them present reversible error.

The record in this, and also on the previous appeal, shows that an array of able, experienced and skillful attorneys were engaged on each side and every point, from start to finish, was hotly contested. Appellant's attorneys undertook and doubtless did, save every point which they thought squinted at error, and guarded in every conceivable way what they regarded as the rights of their client, which was their duty.

Appellant introduced some witnesses and had them testify to a part of a conversation they had with deceased shortly before the homicide, and therein of threats he had made against appellant. On cross-examination, the State asked·the witnesses, and had them testify, to the balance of the conversation of the deceased at the time at which they claimed he made said threats. Some of appellant's bills show that he objected to this testimony on cross-examination. In our opinion it was clearly admissible under the decisions and our statute itself. (Art. 811, Vernon's C. C. P., and decisions noted thereunder.)

Some other of his bills were to the mere asking of some questions by the State's side, to which he objected, and the court sustained his objections. The witnesses were not permitted, and did not answer the questions. It is unnecessary to particularize these. These bills show no error. Huggins v. State, 60 Texas Crim. Rep., 214; Morrow v. State, 56 Texas Crim. Rep., 519; Phillips v. State, 59 Texas Crim. Rep., 534; Hart v. State, 57 Texas Crim. Rep., 21; Warthan v. State, 41 Texas Crim. Rep., 385; Sweeney v. State, 65 Texas Crim. Rep., 593. In some of the bills, we think the court incorrectly sustained appellant's objections to the questions and refused to permit the witnesses

to answer, the testimony being admissible. But as the court sustained appellant's objections and did not permit the witness to answer, this would be to his advantage, and not his injury.

Bills to the argument of the prosecuting attorneys, which is claimed by appellant to be objectionable, are frequently before us, and have been before the court from its foundation. The rules pertaining thereto were laid down by this court long ago in such cases as Bass v. State, 16 Texas C. App., 62; Pierson v. State, 18 Texas C. App., 524; House v. State, 19 Texas C. App., 227; Tweedle v. State, 29 Texas C. App., 586, and many other cases. In more recent cases, such as Mooney v. State, 76 Texas Crim. Rep., 359, 176 S. W. Rep., 56; Little v. State, 77 Texas Crim. Rep., 335, 178 S. W. Rep., 326; Miller v. State, 79 Texas Crim. Rep., not yet reported, and many others, we have had occasion to discuss the earlier cases and reiterate and reaffirm the rules established therein pertaining thereto. We see no necessity of again reviewing this question or the authorities. Clearly none, nor all together, of appellant's bills on this subject show any error. In most instances, if not all, the prosecuting attorney's arguments were not out of the record, and the record gave them a basis for their argument. But whether it did or not in every instance, the court, as a matter of precaution, expressly charged the jury not to consider the argument of counsel to which appellant excepted. So that, in any event, if the argument was objectionable, it was cured by the action of the court.

The court's main charge, together with the special charges of appellant which he gave, we think, correctly announce the law applicable in this case, and submitted every issue properly raised by the testimony in appellant's behalf. Some of appellant's requested charges which were refused were correctly refused, because the points were either covered by the court's main charge, or by those of appellant which the court gave. The bills show that when the court prepared his main charge and at the proper time, submitted it to appellant's attorneys, they then made quite a number of objections thereto, both of omission and commission. The court explained and qualified his bill, where all these matters are presented, by stating: "Certain changes were made in the court's main charge to meet the objections contained and set out in this bill. Reference is made to the main charge to show wherein same was changed and some of the defendant's special charges were given at defendant's request covering the matters complained of and after said changes were made the general charge was resubmitted to the attorneys for defendant and no further objection was made thereto." On the former appeal it was held by this court that provoking the difficulty was raised and that it was the duty of the court to charge thereon. The testimony raising this issue is substantially the same now as it was on the former trial, and there is no such change therein as to not require a charge on that subject. The court's charge, in connection with those of appellant's which he gave, correctly presented the issue to the jury on the question of what other

means appellant must resort to before killing deceased, both under the statute and the decisions pertaining thereto. We see no necessity now of taking up these various objections to the court's charge and the refusal of appellant's special charges and discussing them separately.

The record discloses that the case was tried by the lower court with great care, and in every way appellant had a fair and impartial trial, and his rights were in every proper way guarded by the court, the issues properly submitted, and the evidence amply sufficient to sustain the conviction.. There is no reversible error presented. The judgment will, therefore, be affirmed.

*Affirmed.*

ON REHEARING.

May 31, 1916.

PRENDERGAST, PRESIDING JUDGE.—The motion for rehearing was filed and submitted several weeks ago. A decision on it was deferred to give each side an opportunity, and they were invited to do so, to file whatever answer affidavits and brief they desired. Each side has fully availed itself of this opportunity, and has filed affidavits, original letters, documents and briefs presenting their respective sides and opposing the other. We have carefully considered all these matters and made a careful and thorough investigation of the question.

The original opinion was delivered April 5, 1916, affirming the case. After its original submission by briefs and oral arguments for both sides, the court held the case some two months under consideration before delivering the opinion. Each member of the court personally read and studied the record and the questions and briefs of both sides. The case was tried in the lower court in October, 1915, and the motion for new trial was overruled on October 15, 1915, at which time at the time, at his instance, entered an order allowing sixty days thereafter within which to file bills of exceptions and a statement of facts. There appears in the record a large number of bills of exceptions, each of which on its face appears to have been properly allowed and signed by the trial judge. There also accompanies the record a full statement of facts, which shows on its face to have been agreed to and signed by all of appellant's attorneys—one firm of three members and three other individual attorneys, as attorneys for appellant—and also signed by the district attorney and two other attorneys in behalf of the State. This also appears on its face to have been regularly and properly approved and signed by the trial judge. These documents were filed in the lower court December 11, 1915. and in this court January 12, 1916.

No intimation in any way by either side, or any attorney for either side, was then made to this court, that the approval of said bills and statement of facts, was other than in every way regular and so approved, allowed and signed by the trial judge before they were filed in the lower court. Of course, under these circumstances, this court

fully considered all of them in deciding the case and rendering the opinion.

The first time any intimation was made to this court that said documents were other than as stated, was April 19, 1916, when appellant filed his motion for rehearing. The sole ground of that motion is to strike out said bills and statement of facts because they were not approved and signed by the trial judge, and reverse this case because he was deprived of them without fault on his part and after he had used all the diligence to properly procure them required of him by law.

It is unnecessary to detail the several affidavits, letters, etc., which are attached and made part of the respective pleadings of the parties constituting the motion for rehearing and resistance thereof. Instead, we will succinctly give the conclusions we have reached therefrom, and the record, other than said documents.

Hon. R. M. Smith was the judge of the judicial district of which Smith County, where this trial occurred, was a part. For reasons satisfactory to himself and the attorneys he did not hold the court at the time this trial was had, but Hon. J. S. McIlwaine was duly elected and qualified as special judge, before whom the trial occurred. It seems he held the whole term of this court, which consumed some five weeks, and the term adjourned the next day after he overruled the motion for a new trial. During this trial, he became nervous and somewhat ill, of which all of the attorneys and appellant himself had actual notice and knowledge. Shortly after the court adjourned, Judge McIlwaine and his wife went to Mineral Wells, where they remained two weeks on account of his illness. They returned to Tyler therefrom on November 17th, and he was in his office two days transacting his business. Late in the afternoon of November 18th, in company with his brother, he went to a sanitarium at Arlington Heights, near Fort Worth, where he remained until his death, which occurred December 25, 1915. For a while after reaching that sanitarium he did well—received and read his mail and magazines. After he had been there some two weeks, his wife went to him, staying a day or two, and finding he was doing well returned home in Tyler. While in the sanitarium, for a while, he would have worse days than others, and one day while in his worse condition one of appellant's attorneys, Judge Simpson, who had the bills and statement of facts in charge, 'phoned to the attending physician to know if the judge was in condition to consider and pass upon them. The doctor at that time told the attorney he was in no condition to attend to such matter on that day. A day or two later, when in better condition, appellant's attorney again 'phoned the attending physician and had him state the matter to the judge and to know if he would authorize the district clerk at Tyler to sign his name, allowing and approving said documents, and the judge thereupon stated that while it was somewhat irregular, he would consent that the clerk sign his name thereto, which appellant's attorneys thereupon had the clerk to do. Right after this, his wife visited

him in the sanitarium, to whom he mentioned the matter of authorizing and directing the clerk to sign his name to said documents and of the conversation between the attending physician and himself about the matter and she says he then seemed to understand it. Soon after this he became much worse, unconscious, and remained in that condition until he died at the time stated.

Neither appellant nor his attorneys at any time ever sought to have Judge McIlwaine, or the regular judge either, to extend the time for filing the bills of exceptions to ninety days, or other than the sixty days allowed, as stated. The law, without any order whatever, gave him the right to procure and file a statement of facts at any time within ninety days from the overruling of his motion for a new trial.

. Nor did appellant or his attorneys at any time ever attempt to get the regular judge of the court to act upon or approve either their bills or the statement of facts nor other than as hereinbefore stated. Neither did they attempt at any time to procure bills of exceptions by bystanders. Nor did they attempt to show at any time that they could not have done so.

Two of appellant's attorneys only sign the motion for rehearing. They and appellant himself show that they had no personal knowledge how Judge McIlwaine's signature was procured to said documents, and that they did not learn it until some time afterwards. But it is clearly shown that the preparation of the bills and the agreement to the statement of facts was left to Judge Simpson and one of his partners, who attended to the whole thing for all attorneys and appellant. It was they, and especially Judge Simpson, who procured the approval and signature of the judge. Under the circumstances, unquestionably the appellant himself and the other attorneys can claim no advantage whatever because of any lack of knowledge on their part, but appellant and they are as equally bound thereby as Judge Simpson and his partner could, or would be. Practically the universal practice in criminal cases is for the attorney for the appellant, and not appellant himself, to prepare all bills of exceptions and a statement of facts, and never at any time submit them to the appellant himself but all such matters are settled exclusively between the attorneys for the respective sides and the trial judge, or judge of the court; so that whatever was done in this case by appellant's attorneys is in law and in conscience the same as if done by himself.

The law and the principles applicable to what judge must approve and sign bills and statements in ordinary cases where the trial judge, whether special or regular, is still alive and mentally and physically able to act, are so well settled that we will not attempt to cite the authorities on the subject, but we will state some of the rules.

Under the circumstances just stated, it is necessary for the judge before whom the trial was had to approve and sign these documents; and if the term of the regular judge ends before he acts upon them and he is succeeded by another regular judge, or when the trial occurs before a special judge, the bills must be signed by the judge who tried

the case, even though his term of office expires and he is succeeded by another regular judge, or if the term of court at which the trial was had before a special judge ends, or the regular judge succeeds him on the court, such special judge, though after his term expires, must approve and sign such documents.

Ordinarily, no statement of facts or bills can or will be considered by this court, unless properly approved and signed by some judge authorized to do so; in other words, the attorneys or the parties themselves, can not by agreement dispense with the approval and signature of some judge authorized to act in such matters.

If an appellant is deprived of either his bills or a statement by the opposite side or the trial judge, without any fault on his part and when he has used all the diligence necessary on his part to procure such documents, he is entitled to a reversal; but as stated, he must use all diligence necessary to procure these documents, and the fault for failing to procure them must not lie at his door. If he fails and the fault is his or his attorney's, then he is not entitled to a reversal, even though he gets neither bills of exceptions nor a statement of facts, nor both. Mr. Branch lays down the correct rule and cites some forty cases establishing it. If the failure to have a statement of facts (or bills) filed in time is due to neglect of defendant, or if he fails to show diligence, or fails to exhaust the means provided by law to obtain these documents, they will not be considered, nor in such event will the judgment be reversed for failure to obtain them. Branch's Ann. P. C., sec. 597, p. 206.

Strange as it may seem, after the most diligent search, we have been unable to find any case in either this court or the civil courts of this State, and neither side has cited any where it has arisen and been decided, whether or not the regular, or succeeding judge, can approve such documents in case of the death or insanity of the judge who tried the cause. The courts of other States and jurisdictions are not in harmony on the subject. All the cases and authorities on the subject discuss bills of exceptions, not statements of facts. The rules, however, that would apply to the one would equally apply to the other. The late work of Stand. Ency. of Pro., vol. 4, p. 333, says: "Many courts hold that where the judge dies or goes out of office by resignation or because of expiration of his term, that the bill must be signed by his successor," citing New York Life, etc., Co. v. Wilson, 8 Peters, 291, 8 L. Ed., 949, and the decisions of some thirteen States establishing this rule. To the same effect is 1 Thompson on Trials, sec. 214, and other sections in that chapter; and also 3 Ency. of P. & P., p. 455. The United States Supreme Court in the case cited supra, says of the judge succeeding the judge who tried the cause: "He as the successor of his predecessor, can exercise the same powers and has a right to act on every case that remains undecided upon the docket as fully as his predecessor could have done. The court remains the same, and the change of the incumbents can not and ought not in any respect to injure the rights of litigant parties." In that case, the court

awarded a writ of mandamus, compelling the successor of the trial judge to sign the judgment rendered by his predecessor. We refer also and approve the reasoning and decision in Conway v. Smith Merc. Co., 6 Wyo., 327, 44 Pac. Rep., 940, 49 L. R. A., 201. See also Hays v. McNealy, 16 Fla., 406; Bullock v. Neal, 42 Ark., 278; Watkins v. State, 37 Ark. 370; Cowall v. Altchul, 40 Ark., 172; Shields v. Horbock, 40 Neb., 103; Turner v. Hearst, 115 Cal., 394; Railway Co. v. Rogers, 48 Ind., 427. We think it clear that Judge Smith, the regular judge, was, in law as well as in fact, the successor of Judge McIlwaine as to everything pertaining to this case when the latter judge died, and that he had the power, and it would have been his duty, had the appellant applied to him for that purpose, to have passed upon the said bills and statement of facts; and if he had refused, this court upon proper application to it for that purpose, would by mandamus have compelled him to do so. But none of this was done, or attempted to be done, by appellant, or his attorneys. There would have been no difficulty whatever in Judge Smith intelligently and with full information passing upon all these documents. A regular court stenographer reported the case fully under the law. From this report Judge Smith could unquestionably have ascertained all of the testimony introduced on the trial, and in addition could have thereby passed upon every bill and made every qualification thereto that was made to the bills herein. In addition to this, the attorneys for both sides agreed in writing and signed and approved the statement of facts as the true statement of all of the testimony introduced on the trial, and the attorneys for both sides agreed to all the bills and the qualifications thereof which were made; and Judge Smith also could have granted, if necessary, thirty days longer for the attorneys or himself to have passed upon said bills of exceptions. This court has always recognized as valid such an order made by the regular judge when a special judge or another judge whom he succeeds tried the cause. Such an order is not one which the trial judge alone could have made. Of course, under the statute, if Judge McIlwaine had not died or become wholly mentally incapable to pass upon said documents, then he alone, under the statute, would have had the right to have passed upon them. Our decision herein is in no way in conflict with Richardson v. State, 71 Texas Crim. Rep., 111; Porter v. State, 72 Texas Crim. Rep., 71; Allen v. State, 72 Texas Crim. Rep., 277; Kaufman v. State, 72 Texas Crim. Rep., 455, or McGee v. State, 78 Texas Crim. Rep., 636, 182 S. W. Rep., 309. In the Richardson case, just cited, we purposely said: "If such a contingency should arise where it would be impossible to secure the signature and approval of the trial judge, such as death, removal beyond the limits of the State, or other cause, rendering it impossible to secure his approval, a different question might be presented." That different question is here presented, and we decide in accordance with authority and reason. Besides this, without detailing it, there was much other delay and negligence of the appellant even while Judge McIlwaine lived, which would have prevented a reversal because he

did not sooner present the bills and statement of facts and have Judge McIlwaine sign the same before he became incapacitated or died. Many decisions of this court so hold. We cite some of them: Turner v. State, 22 Texas Crim. App., 42, 2 S. W. Rep., 619; Henderson v. State, 20 Texas Crim. App., 304; Bryant v. State, 35 Texas Crim. Rep., 395, 33 S. W. Rep., 978, 36 S. W. Rep., 79; Bell v. State, 31 Texas Crim. Rep., 521, 21 S. W. Rep., 259; Riojas v. State, 36 Texas Crim. Rep., 182, 36 S. W. Rep., 268; George v. State, 25 Texas Crim. App., 229, 8 S. W. Rep., 25; Monk v. State, 38 Texas Crim. Rep., 602, 44 S. W. Rep., 158; Dennis v. State, 41 Texas Crim. Rep., 160, 53 S. W. Rep., 111; Adams v. State, 41 Texas Crim. Rep., 366, 60 S. W. Rep., 255; Shaffer v. State, 65 S. W. Rep., 1072; Ashman v. State, 74 S. W. Rep., 317; Murphy v. State, 45 S. W. Rep., 719; Bracy v. State, 49 S. W. Rep., 598; Farris v. State, 26 Texas Crim. App., 107, 9 S. W. Rep., 487; Aistrop v. State, 31 Texas Crim. Rep., 467, 20 S. W. Rep., 989; Jones v. State, 163 S. W. Rep., 75; Gowan v. State, 73 Texas Crim. Rep., 227, 164 S. W. Rep., 6; Laws v. State, 73 Texas Crim. Rep., 287, 164 S. W. Rep., 1015.

So that if we should strike out said bills and statement of facts and not consider them, appellant would not be entitled to a rehearing herein, nor to the reversal of this cause because he failed to get them, his failure being due to his own neglect, as shown.

Again, so far as the bills are concerned, if the approval of them by Judge McIlwaine should be held invalid, it would have been appellant's duty, and the proper diligence would require him, to prove up such bills by bystanders. He in no way attempted to do this. Nor does he in any way intimate that he was unable to do so.

Further, the State contends that, under the circumstances of this case, appellant is estopped to now, at this late day, have said bills and statement struck out and claim a reversal because he was deprived of them, claiming that he was deprived of neither, because he got the full benefit of all of them, and he does not claim that any of them are in any particular wrong or did not correctly and fully state the facts and the matters therein. We are inclined to believe that the State's contention is correct.

Again, the State contends, not without show, that the signature of Judge McIlwaine to said documents, under the circumstances, should be held sufficient to properly authenticate them, but it is unnecessary for us to decide that question now.

For years now every district court has had a sworn official court stenographer, whose duty it is, and who does, take down in shorthand and transcribe all the testimony and all the proceedings of every trial. Such reports by stenographers are relied upon by the attorneys for both sides and the judges for complete, full and accurate information and knowledge of everything that occurred on the trial. From this data practically exclusively all statements of facts and bills of exceptions are prepared, and the judge gets therefrom whatever is necessary to explain and qualify bills of exceptions, and it is practically pro-

cured from no other source. Hence, it is the case that all statements of facts and bills of exceptions, when cases are appealed, are prepared and filed after the adjournment of the court and within the time authorized by law or the order of the court. If appellant's contention should be sustained, then the inevitable effect of it would be, if any judge who held a whole term of court or tried any particular case should die or become insane, and his successor could not pass upon statements of facts and bills of exceptions if the trial judge had not done so before, that the whole work of the term or of the particular case would practically be a nullity. This would result in such an injustice to every litigant in every case, that no such doctrine should be held, unless it is imperative under the law that it should be. We think that neither the law nor justice requires or would justify such a holding by this court. In fact, we are thoroughly convinced that under the law the successor of such judge dying or becoming insane would unquestionably have the power and authority, and it would be his duty, to complete the work of such deceased or insane judge.

Under the circumstances of this case, we are clearly of the opinion that the appellant is not entitled to a rehearing, nor to a reversal of this case, whether said bills and statement of facts were properly procured or not, and whether or not they should be struck out and not considered and the order will be accordingly entered overruling his motion.

*Overruled.*